**Linda C. ROMAN**

v.

**Leake W. PARRISH, Superintendent, State Industrial Farm for Women.**

**Civ. A. No. 257–70–R.**

United States District Court
E. D. Virginia,
Richmond Division.

July 6, 1971.

Lawrence E. Freedman, Forman, Cherwek & Freedman, Alexandria, Va., for plaintiff.

Vann H. Lefcoe, Robert E. Shepherd, Jr., Asst. Attys. Gen., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner Linda C. Roman was convicted, after a jury trial in the Circuit Court of Fairfax County, Virginia, of robbery, and sentenced to five years imprisonment. An appeal to the Supreme Court of Virginia was denied. She then filed a petition for a writ of habeas corpus in this Court. Since the same matters as those presented in the petition were presented on appeal, no exhaustion is necessary. Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir.) cert. denied, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

The original petition contained thirteen bases for granting of the writ. All but two were dismissed, and a hearing was ordered. Roman v. Parrish, Civil Action No. 257–70, mem. decis. (E.D.Va. Feb. 3, 1971). Thereafter, petitioner made an additional attack on the "single verdict" system utilized by Virginia in which guilt and punishment are decided by one proceeding. However, the allegation was withdrawn in light of McGautha v. State of California (Crampton v. Ohio), 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), and the Court dismisses same.

The plenary hearing was held on June 14, 1971. It went solely to the issue of identification of petitioner. The other issue, that being that a jury trial allegedly requires the defendant to waive suspension or probation, is considered on memoranda of the parties.

Petitioner was convicted largely on the identification made of her by one Martin McGrory, who was the clerk in the Seven-Eleven store when it was robbed. He had first chosen her from a group of six photographs shown him by Fairfax police five days after the robbery. The pictures were placed on a table for him to look at, and he made the selection with no active coercion by any officer.

However, petitioner's photograph differed from the other five in that the background was different and she had on a high collar, while the others had on low cut drapes. Based upon this, petitioner contends that the in court identification of her was the result of a procedure which violated due process of law.

The controlling principle regarding photographic identification is that set forth in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Therein, in an opinion by Mr. Justice Harlan, it is stated:

It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness

may make an incorrect identification. The danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. * * * Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Id.* at 383–384, 88 S.Ct. at 971.

During the course of the plenary hearing McGrory was asked questions regarding the differences in the pictures. Specifically, in response to a question from the Court, he stated, "I was looking at the face, what I was looking at. I wasn't looking at the way they were dressed." (H.C. Tr. at 32). This coincides with his testimony given at the trial, when he stated, in response to a question from the Assistant Commonwealth's Attorney, "Well, I wasn't looking at the dress, I was looking at the face." (Trial Tr. at 95–96).

■ Consequently, the Court finds that the identification of Miss Roman was not brought about in a manner which violates due process standards. Based on these facts, as required by *Simmons*, it appears to the Court that McGrory did not at the time he was shown the photographs substantially notice the differences in them. Further, as the Court reads *Simmons*, the fact that McGrory testified at the plenary hearing that he identified Miss Roman at the trial based upon her photograph (H.C. Tr. at 35–36) does not affect its conclusion that said identification must stand.[1]

Therefore, the photographic identification procedure does not raise grounds for habeas corpus relief.

Petitioner's other contention is that Va.Code Ann. § 53–272 (1967 Repl.Vol.) is unconstitutional because it requires a person tried by a jury to waive an opportunity for a suspended sentence or probation in that in Virginia the jury imposes the sentence with no provision for it to suspend said sentence or impose probation.[2]

1. The Court's reading of its memorandum of February 3, 1971, forces it to conclude that it could be reasonably determined that the Court's interpretation of *Simmons* was that an in-court identification could not be based upon an earlier viewed photograph. Such was not the intention of the Court, and obviously the Court rejects such a reading of *Simmons*.

2. For one writer's analysis of Virginia's sentencing procedure, see Jury Sentencing in Virginia, 53 Va.L.Rev. 968.

Petitioner further states that the entire factual situation must be taken into consideration, and that by refusing to give an indeterminate sentence instruction and by refusing to allow the jury to see a presentence report, two contentions dismissed in and of themselves in the Court's memorandum of February 3, 1971, the trial court denied petitioner equal protection under the laws and due process.

■ The Court finds no merit to the contention that matters of instructions to the jury and of presentence reports are necessarily involved in the central question presently before it. Instructions to the jury are matters of state law and procedure not involving constitutional issues. Grundler v. State of North Carolina, *supra*. The Court finds no lack of fundamental fairness in the failure of the trial judge to grant the instruction. *Id.*

■ In addition, it has been specifically held that the matter of a presentence report does not raise constitutional question. Hawks v. Peyton, 288 F.Supp. 94, 96 (W.D.Va.1968). There, the trial judge had allegedly not procured a presentence report under Va.Code Ann. 53–278 (1967 Repl.Vol.), a statute which does not apply to convictions by a jury. Yet, if refusal to procure a presentence report when required by statute does not raise a constitutional question, *Id.*, refusal to procure one when not required certainly cannot provide a basis for habeas corpus relief.

Hence, the prior ruling of the Court as to both of the above matters remains the same.

There are two statutes which are relevant to petitioner's present allegation. One is Va.Code Ann. § 19.1–291 (1960 Repl.Vol.), which provides:

The punishment in all criminal cases tried by a jury shall be ascertained by the jury trying the same within the limits prescribed by law.

The import of the above statute is that the jury, upon determining petitioner's guilt had to set the sentence between the statutory limits for robbery, that being five years imprisonment to death. Va.Code Ann. § 18.1–91 (1970 Cum.Supp.).[3] If the jury had returned with less than a five year punishment, it would have been sent back to set punishment within the limits of the statute.

Because of the above mentioned practice, petitioner contends that Va.Code Ann. § 53–272 (1967 Repl.Vol.) is unconstitutional in that it places a penalty upon a defendant wishing to exercise his constitutional right to trial by jury. The statute provides, in relevant part:

After a plea, *a verdict* or a judgment of guilty in any court having jurisdiction to hear and determine the offense, with which the prisoner at the bar is charged, if there are circumstances in mitigation of the offense, or if it appears compatible with the public interest, the court may suspend the execution of sentence, in whole or in part, or the imposition of sentence or commitment, and may also place the defendant on probation under the supervision of a probation officer, during good behavior for such time and under such conditions of probation as the court shall determine. (Emphasis added).

Petitioner's theory is that as a practical matter the trial judge never departs from the sentence imposed by the jury, which the record shows the trial judge to have been unwilling to do in petitioner's case, so that it is really the jury who sentences defendants in Virginia. And, since the jury cannot suspend a sentence or give probation, the right to a trial by jury is unconstitutionally burdened so as to violate due process. Petitioner, in arguing her theory, places heavy reliance upon United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1967).

---

3. The last amendment to Va.Code Ann. 18.1–91 was in 1966, before petitioner was tried and convicted.

However, reliance upon *Jackson* is misplaced, not because that case involved a federal statute, but because the terms of the statute differed from those of the Virginia statutes now in question. In *Jackson*, which involved the Federal Kidnapping Act, the Court pointed out that, "[t]he statute unequivocally states that, 'if the verdict of the jury shall so recommend,' the defendant 'shall be punished * * * by death * * *.' The word is 'shall', not 'may.' In acceding without exception to jury recommendations of death, trial judges have simply carried out the mandate of the statute." *Id.* at 574–575, 88 S.Ct. at 1212. Therefore, the Court struck down that provision, since a trial before a judge or a plea of guilty could not, under the statute, result in the death penalty.

The Virginia statutes are different, however. Even though 19.1–291 provides for imposition of sentence by the jury, § 53–272 allows the trial judge to suspend that sentence or place the defendant on probation. Therefore, in this instance, *Jackson* cannot form a basis for habeas corpus relief.

Thus, the Court must look to the general rules surrounding habeas corpus review of state criminal procedure statutes, and make its determination based upon those rules. Those rules are set forth quite clearly in Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), wherein Mr. Justice Harlan, speaking for the Court, stated:

> Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. * * * But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority. In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it im-

possible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases. As Mr. Justice Cardozo had occasion to remark, a state rule of law "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." (citations omitted). *Id.* at 563–564, 87 S.Ct. at 653.

Additionally, the above declaration should be coupled with that of Mr. Justice Harlan's later statement, also speaking for the Court, wherein he said:

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments as to which course to follow. McMann v. Richardson, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)." Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).

An analysis of the facts in the instant matter as related to the above stated propositions shows that petitioner cannot prevail. The choice a defendant must make is whether or not to be tried by a jury, and since both the prosecutor and trial judge must concur in a waiver, it is not always his or her choice at that. But, the petitioner, as a matter of law, suffered no prohibited burden by being tried by a jury, because the Virginia statutes specifically provide for suspension or probation by the judge after the jury's verdict of guilty and sentence. Therefore, the answer to the threshold question of *McGautha* is that the stat-

utes on their faces do not appreciably impair the policies behind the right to a jury trial.

Yet, petitioner alleges that even though the statutes make the jury's sentence no more than a recommendation, as a practical matter the judge always follows it. There is no evidence of petitioner's contention before the Court, and the trial judge's refusal to suspend or grant probation recognized his discretion in the matter. (Post-trial Tr. at 30)

■■ Consequently, the Court finds that Virginia's method of sentencing in a jury trial does not violate due process. As stated in *Spencer, supra*, the Court cannot concern itself with what would be the most desirable method of sentencing so long as the method employed is not fundamentally unfair, which this Court finds it is not.

The petition will be dismissed.

An appropriate order will enter.