**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard Nicholas JOHNSON,
Defendant-Appellant.**

**No. 73-3519.**

United States Court of Appeals,
Fifth Circuit.

June 28, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1974.

---

Charles O. Baird, Jr., Atlanta, Ga., Stuart R. Carter, Jr., Washington, D. C., Daniel J. Markey, Jr., New Orleans, La., for defendant-appellant.

John W. Stokes, Jr., E. Ray Taylor, U. S. Attys., Atlanta, Ga., David Ferber, Sol., Office of Gen. Counsel, Robert G. Ryan, S.E.C., Washington, D. C., for plaintiff-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Howard N. Johnson appeals from the judgment of conviction entered by the district court following his bench trial. On January 24, 1973, a nine-count indictment was returned charging appellant with various violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1970), Section 5(a) of the Securities Act of 1933, 15 U.S.C. § 77e(a) (1970), and 18 U.S.C.A. § 1341 (Supp.1974) (mail fraud). Following his trial conducted from August 27th through August 31, 1973, the district judge found appellant guilty of seven counts of the nine-count indictment.[1] Appellant was sentenced to concurrent three-year sentences on each of the seven counts.

On this appeal, Johnson specifies four main contentions which he asserts require reversal of his conviction. First, he alleges that the Government did not introduce sufficient evidence to warrant his conviction. Second, he contends that the Government's preindictment delay impermissibly prejudiced his ability to present an adequate defense to the charges. Third, he alleges that the trial court improperly interfered with his

---

1. Appellant was found guilty of violating the four counts charging violations of Section 5 of the Securities Act, (selling unregistered securities) (Counts 6, 7, 8 and 9), two counts charging violations of Section 17(a) of the Securities Act, (fraudulent sales of securities) (Counts 1 and 2), and one count of mail fraud, 18 U.S.C. § 1341 (Count 3). The trial judge acquitted appellant on the two other counts of mail fraud (Counts 4 and 5).

ability to present a complete defense to the charges. Finally, he asseverates that he did not intelligently and voluntarily waive his right to specific findings of fact by the trial judge. After a careful review of the evidence introduced and the applicable and controlling legal principles governing the issues presented by appellant, we are firm in the belief that no prejudicial error was committed below and thus affirm.

## I

■■ Since appellant was sentenced to concurrent three-year sentences on each of the seven counts under which the district court found him guilty, if there was sufficient evidence under any count, his conviction should be affirmed.[2] Furthermore on appeal, our standard for reversing on the ground that there was insufficient evidence to warrant an appellant's conviction is circumscribed. Viewing the evidence in the light most favorable to the Government, if the record demonstrates that sufficient evidence was introduced from which a reasonably minded trier of fact could conclude that appellant was guilty beyond a reasonable doubt, the judgment must be affirmed.[3]

In Counts 1 and 2, appellant was charged and convicted of violating Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1970). That Section provides in relevant part:

It shall be unlawful for any person in the offer or sale of any securities

. . .

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The Government introduced evidence which fully placed appellant's acts within the prohibitions delineated above.

In early 1969, James Owens and Robert Doty decided that it would be a wise business venture to operate a television production business in Atlanta, Georgia. They envisioned that their business venture would produce television commercials and other special features for the local television stations. However, one essential ingredient was missing from their business dream. They needed a large amount of capital. Accordingly, Owens and Doty began to investigate possible sources of funds to complement their production skills gained from long experience in the television industry.

Owens and Doty were introduced to a local Atlanta realtor, Oliver Coleman. Coleman informed the two entrepreneurs that he knew a man, Howard Nicholas Johnson, a Florida resident, who might be interested in investing in their new enterprise. Accordingly Johnson was contacted by Coleman and came to Atlanta where he reviewed the tentative plans for the new business. He readily agreed that Atlanta would be a good market for such an undertaking and agreed to finance it. On April 30, 1969, these proposals were formalized into a newly incorporated Georgia corporation by Owens and Doty. Johnson was named the president of the new corporation, Television Productions, Incorporated.

On May 15, 1969, Owens, Doty and Johnson entered into a formal agreement. Johnson agreed to guarantee the

2. Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Thomas v. United States, 431 F.2d 940 (5th Cir. 1970); United States v. Abigando, 439 F.2d 827 (5th Cir. 1971).

3. *See* Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

purchase of television equipment from the Ampex Corporation of California. Furthermore, he agreed to open a line of credit for the new corporation at the Fulton National Bank in Atlanta in the amount of $100,000. In return, Johnson was conveyed 50% of the stock in Television Productions, Inc. Additionally, he was given the right to vote the retained shares of Doty and Owens in the event that the new corporation should fall in arrears on its debts for a period of three months.

Thus the traditional capitalistic mixture of expertise and finances was joined in hopes of producing profits. However, the events that developed subsequently demonstrated that appellant intended the new corporation for uses other than purely television production. On June 17, 1969, without the knowledge of Owens and Doty, appellant merged Television Productions, Incorporated with Sand and Seas Industries, Inc., a Florida corporate shell. This merger was consummated by the use of the forged signatures of Doty and Owens on the merger plan. The plan stated that *all* the directors of Television Productions, Inc., had approved the merger at a board of directors meeting on June 6, 1969. Doty and Owens, both directors, testified that they were unaware of any such meeting and had never approved the merger. The newly merged Florida corporation was named Television Productions International Corporation (TPIC).

Johnson and an associate, J. Francke Fox, Jr., attempted to interest prospective investors in what was termed "Johnson's Georgia television company." These potential investors were taken on a tour of the Atlanta premises. Many sales of stock were culminated as a re-

sult of these visits and other contacts. As a further inducement for the sale of the stock, Johnson promised the investors that he would repurchase the stock within a certain length of time at a substantial profit to the purchaser.[4]

Furthermore, Johnson wrote the investors on stationery which listed the name of the corporation as "Television Productions International, Incorporated." At the time that Johnson wrote these letters, Television Productions International, Incorporated was not in existence.[5] The investors easily confused the names of the existing Florida corporation, Television Productions International Corporation and Television Productions International, Incorporated. Additionally, Johnson signed these letters as president of the then non-existent corporation. Thus, the investors were led to believe that they were buying stock in the Television Productions International, Incorporated, a non-existent corporation, when in fact they were buying stock in the Florida corporation.

From their testimony, it is evident that the potential and actual investors were not experienced in trading in stock. They were not familiar with the television production business and had no prior experience with Television Productions, Incorporated, Television Production International Corporation or Television Productions International, Incorporated. They were never furnished a prospectus of Television Productions International Corporation by Johnson. Prior to their purchase of stock, they were not informed that the stock was "restricted." Furthermore, it was apparent that the investors did not understand the consequences of buying restricted stock.

---

4. The stock was selling for four dollars a share. Johnson agreed to repurchase it at six dollars a share in twelve or eighteen months from the original date of purchase.

5. Evidently, Owens and Doty had become increasingly dissatisfied with their relationship with Johnson and thus sought to organize their own corporation. They located an individual who was interested in financing

their new corporation. On March 13, 1970, Owens and Doty incorporated in the State of Georgia the new corporation which they named Television Productions International, Inc. This was several months after Johnson had represented to the investors that he was president of this new corporation with which he had no connection.

On December 11, 1969, appellant opened a special bank account at the Halifax National Bank of Port Orange, Florida in the name of Television Productions International, Incorporated. The only authorized signatures for this account were shown as Howard N. and Margaret Mary Johnson. In fact, Television Productions International, Incorporated was not in existence at this time and neither Johnson nor his wife was ever legally connected with the corporation. A fraudulent corporate resolution was presented to the bank to permit Johnson to open the account. Doty, Owens and the other Television Productions International Corporation stockholders were never informed of the Florida bank account even though $19,000 of the proceeds of the sale of TPIC stock were placed in the account which could be withdrawn personally by appellant and his wife.

When the time arrived for honoring Johnson's previous promises to the investors in TPIC to repurchase the stock, he refused. Thus not only did the investors buy stock in a corporation which they did not know existed but when the time ripened for honoring a primary impetus for their investment, Johnson refused to honor his previous commitments.

■ We think the previously recited events amply demonstrate a violation of Section 17(a). ". . . [I]t is not necessary that the government prove that anyone was actually defrauded in order to show a violation of the statutes under which defendant was indicted." Estep v. United States, 223 F.2d 19, 22 (5th Cir. 1955). The evidence establishes that appellant "obtain[ed] money . . . by means of . . . untrue statement[s] of . . . material fact[s] . . . [and] . . . omission[s] . . . of material fact[s] . . ." 15 U.S.C. § 77q(a)(2).

The appellant misled the investors by failing to completely inform them of the nature of the corporations involved. He failed to inform the investors that Tele-vision Productions, Incorporated and Sand and Seas Industries, Inc. had been fraudulently merged without the knowledge or consent of the other directors of Television Productions, Incorporated. He misled the investors into believing that they were purchasing stock in Television Productions International, Incorporated, a then non-existent corporation, when in fact they were purchasing stock in Television Productions International Corporation. Additionally, appellant did not disclose to the investors that the proceeds from the sales of TPIC stock would be deposited in a bank account over which he would have personal control without any benefit accruing to the corporation involved. Thus material facts were misstated and withheld from the potential and active investors which may have affected their decision to invest or not to invest. See S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968).

■ Appellant's next two contentions are also without merit. First, he contends that the preindictment delay unduly prejudiced his defense of the charges made. This issue was never raised below until after appellant had presented his defense. Appellant has not asserted any grounds which substantiate his claim of prejudice resulting from the Government's delay. Accordingly his claim is without merit. See United States v. Marion, 404 U.S. 307, 321–325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

■ Second, appellant contends that the trial court impermissibly limited his liability to present an adequate and full defense by urging him to proceed with the presentation of his case. Our reading of the record shows that the district court was concerned with the cumulative nature of the evidence offered by appellant and therefore directed him to proceed with new matters. A trial court has the right to control the orderly introduction of evidence and certainly may prevent the needless repetition of evidence which is merely cumula-

tive and does not shed light on new facts not previously disclosed. *See* United States v. Caracci, 446 F.2d 173, 177 (5th Cir. 1971). The record here demonstrates that the trial court was properly exercising its broad discretion. We find no abuse of that discretion.

■ Finally, Johnson contends that the district court impermissibly conditioned his request for a non-jury trial on the waiver of special finding of facts by the court. Rule 23 of the Federal Rules of Criminal Procedure reads in relevant part:

(a) Trial by Jury. Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government.

\* \* \* \* \* \*

(c) Trial Without a Jury. In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

It is basic textbook law that one does not have a right to a non-jury trial unless the trial court so consents. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). When the defendant requests a bench trial, may the district court condition the request of the waiver of specific findings of fact by that court as provided by Rule 23(c)? A reading of the record in this case establishes that following appellant's trial the district court issues sufficient oral findings of fact to cure whatever error might have arguably resulted from its refusal to make special findings pursuant to Rule 23(c). Thus we pretermit the basic issue here presented for a later case demonstrating actual prejudice.

At the commencement of appellant's trial, the district judge addressed appellant and his counsel. The following discussion was held:

THE COURT: You have the right, if you so desire, to waive a jury trial, that is, by your own agreement not to have a jury trial. Do you understand that?

MR. JOHNSON: Yes, sir.

THE COURT: I am also required under the law in a non-jury trial to make findings of fact and conclusions of law, written findings of fact and conclusions of law. However, I have already advised your lawyer that in the event you would not waive that right that I would proceed to try it by jury, because I just don't have the time in which to review it later on and make findings of fact and conclusions of law.

You have the right to waive the Judge's written findings of fact and conclusions of law and have him pronounce judgment at the conclusion of the trial—

MR. JOHNSON: Yes, sir.

THE COURT: —on the various counts. Now, do you understand that?

MR. JOHNSON: Yes, sir.

THE COURT: And do you waive your right to have the Judge make findings of fact and conclusions of law in this case?

MR. JOHNSON: Yes, sir, I do.

Thus the record demonstrates that the district court specifically conditioned the right to a non-jury trial on the waiver of findings of fact.

The precise issue which is urged by appellant today has only been resolved by two other circuit court opinions. In Howard v. United States, 423 F.2d 1102 (9th Cir. 1970), the appellant made a specific request for findings of fact. The trial court, however, refused to permit a bench trial until the appellant executed a waiver of his earlier request of special findings. The Ninth Circuit, in strong language, rejected the trial

court's conditions for a non-jury trial, stating:

> We cannot condone an avoidance of Rule 23(c) by the expedient of conditioning a jury waiver on a waiver of special findings. The defendant's right to such findings is not trivial, and his exercise of that right is not to be impaired by the exertion of pressure from the court.

423 F.2d at 1104. First, it should be noted that the *Howard* case is somewhat distinguishable from the present fact situation. Unlike appellant Howard, Johnson never requested specific fact findings. Second, at no time during the trial or following trial, did Johnson request special findings. In *Howard* the court gave emphasis to a *timely* request for findings in the following statement:

> Under Rule 23(c) of the Federal Rules of Criminal Procedure the defendant was entitled to those findings, and it would have been reversible error to have refused *his timely request for them.* (emphasis added)

423 F.2d at 1104. Finally, while the trial court in *Howard* did not make any special findings, the trial court in the instant case at the time it rendered its verdict and at the sentencing hearing, did make comments from the bench which cured its initial refusal to make specific findings of facts. These comments will be discussed below.

The *Howard* opinion was adopted as the guiding rule of law by the Third Circuit sitting *en banc* in United States v. Livingston, 459 F.2d 797 (3d Cir. 1972). The Third Circuit posed the issue presented as ". . . whether it was permissible for the district judge to condition his grant of defendant's request for a non-jury trial on defendant's waiver of findings of fact and conclusions of law." 459 F.2d at 797. Importantly, *Livingston* differed from *Howard* in that appellant Livingston never re-

quested findings of fact. *Livingston* like the instant case involved the issue of whether the district court may condition a non-jury trial on waiver of specific findings by the court even where there never was a request for findings by the defendant and he specifically waived his rights at the behest of the trial court.

In response to the issue presented, the Third Circuit held:

> . . . [T]he district court erred when it conditioned defendant's request for a non-jury trial on a waiver by him of his right to request that the court find the facts specially.
>
> \* \* \* \* \* \*
>
> Findings of fact are essential to proper appellate review of a conviction resulting from a non-jury trial. This was an important consideration when the present text of Rule 23(c) was promulgated, altering pre-existing law and *requiring* the trial judge to make special findings, if requested.

459 F.2d 798. Accordingly, the case was not reversed but was remanded to the district court so that it could make the special findings of fact. *See also*, United States v. Snow, 484 F.2d 811, 812 (D.C.Cir.1973) (where district court recognized the need for special findings but through inadvertence failed to do so, the case was remanded for special findings); Haywood v. United States, 393 F.2d 780 (5th Cir. 1968) (where general findings made by the district court were inconsistent and confusing and the right of allocution was denied, the case was reversed and remanded).

■ In some situations, it may be impermissibly coercive for a trial court to condition a non-jury trial on the waiver of special findings of fact. Special findings are necessary, especially in a complex case, for an intelligent appellate review of a defendant's contentions. Whether the defendant desires special findings should normally be his decision alone.

**1138**

The Government vigorously contends, however, that the trial court through comments from the bench at the time it delivered its judgment and subsequently at the sentencing hearing elucidated the grounds on which it based its judgment. We agree.[6] Although the reasons delineated at these two hearings were not as complete as they could be, they do suffice as a basis for intelligent appellate review.[7] These observations by the trial court demonstrate to us that the court applied the correct legal principles to the instant case.[8]

It is not necessary for us to answer the precise issue presented to the Ninth and Third Circuits since we hold that even assuming that error was committed below by the trial court's imposition of the condition, this error was nevertheless cured by its subsequent findings from the bench.

Accordingly, the judgment of the district court is

Affirmed.

---

**6.** We have held previously that findings of fact made from the bench following the trial of a civil case may be sufficient to meet the mandatory requirements of Rule 52, F.R. Civ.P. *See* Movible Offshore, Inc. v. M/V Wilken A Falgout, 471 F.2d 268 (5th Cir. 1973). *See also* Amplex of Maryland, Inc. v. Outboard Marine Corp., 380 F.2d 112 (4th Cir. 1967). Of course, whether oral findings are sufficient will depend on the circumstances presented by each case.

**7.** Although not completely applicable to the instant criminal case, our court has previously enunciated standards for determining whether a trial court's findings of fact are adequate in a civil suit. In Gulf King Shrimp Company v. Wirtz, 407 F.2d 508, 515 (1969), the court explained that:

"The purpose of F.R.Civ.P. 52 is to afford the appellate court a clear understanding of the basis of the trial court's decision. Featherstone v. Barash, 10 Cir. 1965, 345 F.2d 246. 'The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision.' Carr v. Yokohama Specie Bank, Limited, 9 Cir. 1952, 200 F. 2d 251, 255. 'Findings may be sufficient if they permit a clear understanding of

the basis of decision of the trial court, irrespective of their mere form of arrangement.' Featherstone v. Barash, *supra*, 345 F.2d at 250."

The underlying purpose of Rule 52, F.R.Civ.P., and Rule 23(c), F.R.Cr.P., is the same. In this case, the trial court has made adequate findings for purposes of our review. *See also* Lettsome v. United States, 434 F.2d 907, 909 (5th Cir. 1970).

**8.** The trial court noted that the names of the various corporations involved were very similar and that it was quite understandable how potential investors were misled and that this confusion "was part of the scheme" used to defraud investors. He further commented that "there's no question but that the securities were unregistered, that they were sold and that the mails were used in effecting those sales." Additionally the district court observed that "[t]here is no evidence that this was a restricted sale, anybody who wanted to buy it could buy that came up and wanted to buy. There was no offer to show the financial status of the company." It is not necessary that special findings be filed simultaneously with the verdict. Indeed, one court has held they may be filed subsequent to sentencing. *See* United States v. Ogden, 484 F.2d 1274 (9th Cir. 1974).