Richard VINES, Appellant,

v.

R. M. MUNCY, Superintendent, James River Correctional Center, and The Attorney General of Virginia, Appellees.

No. 76–2026.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1977.

Decided March 28, 1977.

---

4. 397 U.S. at 757, 90 Ct. at 1473.

**344**

Forrest W. Goldston and Steven A. Grossman, Third Year Law Students (George K. Walker and Beirne M. Harding, Wake Forest University, Winston-Salem, N.C., on brief), for appellant.

Jerry P. Slonaker, Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

By this appeal, the appellant challenges the validity of certain procedures relating to criminal jury trials in Virginia. The procedure challenged follows the mandate of the Constitution and the statutes of that State. The Virginia Constitution, in common with the Constitution of all States generally, guarantees every person accused of crime in its courts a right to a jury trial.[1]

In such a jury trial, Virginia, along with a minority of the other State jurisdictions, allows the jury in a unitary trial to determine the guilt or innocence of the accused, and, if it finds the accused guilty, to fix his punishment.[2] However, the jury's determination of punishment in such a case is subject to the power of the trial court at the time of the actual imposition of sentence to "suspend the execution of sentence, in whole or in part, or the imposition of sentence or commitment" or to "place the defendant on probation * * * under such conditions * * * as the court shall determine," if it finds that "there are circumstances in mitigation" or if such suspension or probation would be "compatible with the public interest."[3] At the time when the appellant was sentenced, there was no express requirement that, in determining whether there were "circumstances in mitigation," the trial judge should secure a pre-sentence or "probationary" report, though there was no prohibition on the right of the trial court to require such a report prior to sentencing. On the other hand, if the accused wished, he could waive the right to a jury trial and opt for a trial by the court, *if but only if*, the prosecution agreed and the court consented. Assuming the accused is convicted after a trial by the court following an agreed waiver of a jury trial, the trial judge is under a mandatory obligation to procure, upon the demand of the defendant, a "probation" report before imposing sentence.[4] It is the absence of a mandatory requirement on the trial judge, after a jury verdict of guilty, to secure a probation report before determining whether to suspend or place on probation the accused, as contrasted with the right to

---

1. Art. I, § 8, Constitution of Virginia; § 19.2–260, § 19.2–257 (felonies); § 19.2–295, Code of Virginia (1950); *Lewis v. Cave* (1962) 203 Va. 737, 127 S.E.2d 118, 119; *McClung v. Weatherholtz* (W.D.Va.1972) 351 F.Supp. 5, 9.

2. § 19.2–295, Code of Virginia (1950); *Witcher v. Peyton* (4th Cir. 1967) 382 F.2d 707, 708, n. 1.

3. § 53–272, Code of Virginia (1950); *Slayton v. Commonwealth* (1946) 185 Va. 357, 38 S.E.2d 479, 483; *Wilborn v. Saunders* (1938) 170 Va. 153, 195 S.E. 723, 726.

4. Since trial in this case, § 53–278.1 was amended effective October 1, 1975 and is now codified as § 19.2–299 (Repl.Vol.1975). As amended, it now requires, on demand of the convicted defendant, a probation report before final sentence, without regard to whether the defendant was tried by the court or by a jury. For a discussion of the change in the statute, see *Smith v. Commonwealth* (1976) 217 Va. 329, 228 S.E.2d 557, 558.

such a report before sentence after a finding of guilt in a trial by the court, which presents the narrow constitutional claim for relief pressed by the appellant.

This claim of a constitutional violation arose in connection with a prosecution of the appellant under an indictment, charging in two counts, the commission of two separate crimes of abduction with intent to defile.[5] Before trial on such indictment, after a plea of not guilty, appellant sought to waive a jury trial. The prosecution, however, refused to consent and the appellant proceeded to trial before a jury. At trial, he was convicted under both counts and his punishment was fixed by the jury at eight years on each count. At the suspension hearing before the trial judge, he was accorded the right of allocution and permitted to submit any circumstances in mitigation of sentence. The trial court, however, refused to suspend the sentence as fixed by the jury; instead, it ordered the two sentences to run consecutively. Following exhaustion of state remedies, appellant sought *habeas* relief in the District Court. That court denied relief and we affirm.

As stated, it is the appellant's only properly raised claim of error on appeal, as it was on appeal in the state court, that because the prosecution refused to consent to his request to be tried by the court rather than by a jury, he was deprived of the right he would have had, had he been convicted after a trial by the court, to require the sentencing court to procure a pre-sentence or probation report before determining whether to suspend sentence or to grant parole. He posits that such distinction in rights at sentencing between a defendant convicted by the court and one convicted by a jury—a difference resting he contends on no rational state purpose—represents a violation of Equal Protection under the Constitution. The appellant has, however, interspersed in his argument in support of this contention other points which challenge the

concept of jury sentencing itself but which, though perhaps raised obliquely at trial, were never pressed on appeal in the state court or in any state post-conviction proceeding. Since we find them without merit, it may obviate the possibility of other proceedings if we dispose of these additional points before we consider the only properly presented challenge to the Virginia sentencing procedure by the appellant.

■ As the first of these points which are argued by the appellant in his brief but were not raised in the state court by appeal or in post-conviction proceeding, the appellant appears to urge that the right to waive a jury trial should be wholly one for the criminal defendant and that it is constitutionally impermissible, to permit the prosecution to veto the accused's determination to waive. Unquestionably, as appellant suggests, many jurisdictions do give such right to the defendant free from any veto by the prosecution; but whether the defendant in a particular jurisdiction has this absolute right to waive or whether the effectiveness of the waiver is subject to the consent of the prosecution and/or the court varies from jurisdiction to jurisdiction.[6] Virginia, as has the Federal Government,[7] has chosen to give the prosecution a veto in the right of the defendant to waive. In so doing, neither Virginia nor the Federal Government violates any constitutional right of the defendant. This was unequivocally settled by the opinion in *Singer v. United States* (1965) 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 where Mr. Chief Justice Warren, speaking for a unanimous court, said:

In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right con-

---

5.  § 18.1–38, Virginia Code (1950).

6.  The appellant, in his brief, lists thirteen jurisdictions which, as Virginia, require consent of

the prosecution and the trial court to a criminal defendant's waiver of a jury trial.

7.  Rule 23(a), Federal Rule Crim. Proc.

cerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him.[8]

*Singer* did add in its concluding paragraph that there "might arise situations where 'passion, prejudice * * * public feeling' or some other factor" could render "impossible or unlikely an impartial trial by jury" and that in such a situation trial by the court might be compelled.[9] There is, however, no claim of such extraordinary circumstances in this case and it is unnecessary for us to consider whether the language in *Singer,* quoted *supra,* creates some limitation upon the right of the prosecution to veto a criminal defendant's waiver of a jury trial.[10]

**8.** To the same effect are: *Serfass v. United States* (1975) 420 U.S. 377, 389, 95 S.Ct. 1055, 43 L.Ed.2d 265; *United States v. Johnson* (5th Cir. 1974) 496 F.2d 1131, 1136, *cert. denied* 420 U.S. 972, 95 S.Ct. 1391, 43 L.Ed.2d 651 (1975); *United States v. Simon* (2d Cir. 1969) 425 F.2d 796, 799, n. 1, *cert. denied* 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); *United States v. Igoe* (7th Cir. 1964) 331 F.2d 766, 768, *cert. denied* 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965); *Thompson v. Slayton* (W.D.Va.1971) 334 F.Supp. 352, 357; *May v. Peyton* (W.D.Va.1967) 268 F.Supp. 928, 930, *rev.* on other grounds 398 F.2d 476 (1968), *cert. den.* 402 U.S. 948, 91 S.Ct. 1602, 29 L.Ed.2d 117 (1971).

**9.** *See* 380 U.S. at 37 and 38, 85 S.Ct. at 791; *cf. United States v. Wright* (6th Cir. 1974) 491 F.2d 942, 945, *cert. denied* 419 U.S. 862, 95 S.Ct. 113, 42 L.Ed.2d 97 (1974); *United States v. Farries* (3d Cir. 1972) 459 F.2d 1057, 1061, *cert. denied* 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145 (1972).

**10.** *Cf., United States v. Morlang* (4th Cir. 1975) 531 F.2d 183, 186–7; *United States v. Caldarazzo* (7th Cir. 1971) 444 F.2d 1046, 1050, *cert. denied* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971).

**11.** The editor in 53 *Va.L.Rev.* 968, 970 n. 3, lists many of the articles written in condemnation of jury sentencing.

The appellant also questions broadly the validity of discretionary jury sentencing, conducted without precise criteria for the exercise of such discretion, and, as a related issue, the validity of a unitary trial rather than of a bifurcated trial for the determination of both guilt and punishment. He contends that the absence of criteria for jury sentencing and the use of a unitary trial violate due process. These are not, however, new arguments; they simply repeat criticisms which have long been leveled at jury sentencing.[11] Such criticisms prompted the Virginia Legislature in 1975 to authorize "a study of the jury system and the feasibility of abolishing jury sentencing in Virginia.[12] It must, however, be recognized that much the same criticisms can be directed at judge sentencing, which also represents the exercise of unfettered discretion, but on the part of the judge, rather than the jury. Sobeloff, *Appellate Review of Sentences,* 32 F.R.D. 249, 268 (1962);[13] Note, *Criminal Sentencing,* 45

On the other hand, the reasoning behind the statutory commitment of the unfettered, "standardless' method of jury sentencing in criminal cases was stated by then Chief Justice Traynor in *People v. Polk* (1965) 63 Cal.2d 443, 47 Cal.Rptr. 1, 6, 406 P.2d 641, 646, thus:

Finally, defendants contend that the trial court must instruct on the legal considerations that the jury should take into account when deciding whether the penalty should be death or life imprisonment. We do not agree that such an instruction is compulsory. * * * The Legislature has thus indicated its belief that jurors understand the factors that are relevant to such a decision. Recitation of such factors by the trial court is therefore not essential. The trial court, may, however, properly aid the jury by stating the kinds of factors that may be considered, thereby setting the tone for the jury's deliberation.

**12.** The Virginia study group has, however, made no report, and discretionary jury sentencing remains the practice in Virginia.

**13.** In this article, Judge Sobeloff said:

* * * It is both unwise and unfair, it seems to me to let a single judge handle the job [of sentencing] alone with no authority in any quarter to check on possible aberrations, however unjust the result may be, provided only that the statutory limit has not been exceeded. The truth is that passing sentence is far too delicate a power and too conse-

*Miss.L.Rev.* 782 (1974). That there are plausible flaws in both jury and judge sentencing merely illustrates that there is no system of sentencing free from criticism on some ground or other.[14] But because it is possible to find fault with some aspect of a state's criminal procedure, such as sentencing, does not necessarily justify the invalidation of such procedure. After all, "the Federal Constitution * * * does not guarantee trial procedures that are the best of all worlds, or that accord with the most enlightened ideas of students of the infant science of criminology, or even those that measure up to the individual predilections of members of this Court." *McGautha v. California* (1971) 402 U.S. 183 at 221, 91 S.Ct. 1454 at 1474, 28 L.Ed.2d 711. A state's criminal procedure, as it relates to sentencing or what not, "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar," *Snyder v. Massachusetts* (1934) 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, and the Supreme Court has said that states "have always enjoyed 'wide leeway' " in the application of constitutional standards in criminal procedures.[15] Accordingly, when a state, such as Virginia, concludes that unrestricted jury sentencing whether in a unitary or a bifurcated trial, is preferable, "because, for instance, it guarantees the maintenance of a 'link between contemporary community values and the penal system,' *Witherspoon v. Illinois, supra,* 391 U.S. at 519, n. 15, 88 S.Ct. at 1775 n. 15,[16] or because juries are more likely to act with compassion, fairness, and understanding than the judge,' Stubbs, Jury Sentencing in Georgia—Time for a Change?, 5 Ga.St.B.J. 421, 426 (1969), nothing in the Due Process Clause of the Fourteenth Amendment intrudes upon that choice." *Chaffin v. Stynchcombe* (1973) 412 U.S. 17, 22, 93 S.Ct. 1977, 1980, 36 L.Ed.2d 714.[17] Nor will the fact that a unitary trial which may force a defendant to present evidence in mitigation of punishment or to put his character in issue in order to press his claim for compassionate punishment constitute a violation of the accused's constitutional protection against compelled self-incrimination.[18]

The appellant would, however, find in *Woodson v. North Carolina* (1976) 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (decided July 2, 1976) and *Gregg v. Georgia* (1976) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (decided July 2, 1976), a shadow over the continued vitality of *Singer, Crampton v. Ohio*[19] and *Chaffin.* We find nothing in either *Gregg* or *Woodson* which could be considered as overruling the plain holdings of the earlier cases. Certainly, the court used no language which questioned the earlier holdings. *Gregg* and *Woodson* should, in our judgment, be treated as *sui generis,* dealing as they do with the very delicate problem of the death penalty and its unique

---

quential to be lodged in any man's hands entirely unsupervised. * * * In no other area of the law are judicial prerogatives so uncontrolled or criteria so obscure—in no other country is such a situation permitted to exist.

In a way, the Virginia system is free of the criticism so trenchantly stated by Judge Sobeloff against judge-sentencing. The jury's 'verdict on sentence is, as we emphasize later, not absolute but is subject to review by the court.

**14.** *See* the criticisms of the various sentencing methods detailed in O'Leary, Gottfredson and Gelman, *Contemporary Sentencing Proposals,* 11 *Crim.L.Bull.* 555 (1975).

**15.** *Spencer v. Texas* (1967) 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606.

**16.** *Witherspoon v. Illinois* (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

**17.** *See, also,* to the same effect, *McGautha v. California, supra* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711; *Spencer v. Texas, supra* 385 U.S. 560, 87 S.Ct. 648; *Giaccio v. Pennsylvania* (1966) 382 U.S. 399, 405, n. 8, 86 S.Ct. 518, 15 L.Ed.2d 447; *Nail v. Slayton* (W.D.Va.1972) 353 F.Supp. 1013, 1020–1; *Bloodgood v. Commonwealth* (1971) 212 Va. 253, 183 S.E.2d 737, 738; *Ward v. State* (Tex.Crim.App.1971) 474 S.W.2d 471, 478; *State v. Music* (1971) 79 Wash.2d 699, 489 P.2d 159, 164 (the latter four cases rely on *McGautha* ).

**18.** *McGautha, supra,* 402 U.S. at 213–7, 91 S.Ct. 1454.

**19.** 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711.

moral and legal dilemmas; they certainly are not applicable to a criminal trial where the death penalty is not the issue.

The appellant finds another defect, he asserts, in the alleged failure of the Virginia jury-sentencing procedure to permit the presentation to the sentencing jury of evidence exclusively in mitigation of punishment. The Supreme Court has never "directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so." [20] Nor for that matter have we been cited to any Virginia authority which declares such evidence inadmissible in the unitary trial such as that of the appellant; to the contrary, the clear implication of most of the relevant Virginia decisions is that evidence going solely to the punishment issue—at least within reasonable limits—is admissible. See *Huggins v. Commonwealth* (1972) 213 Va. 327, 191 S.E.2d 734, 736; *Johnson v. Commonwealth* (1968) 208 Va. 481, 158 S.E.2d 725, 730.[21] Certainly, the trial court in this case did not deny the appellant the right to introduce evidence in mitigation of punishment, completely unrelated to the issue of guilt or innocence. It did—only more so—what the trial court, whose action was under review in *McGautha*, had done. *McGautha* arose in a jurisdiction where there were decisions that "evidence [could] not be introduced directed specifically to-

wards the punishment issue in a unitary trial;" but Justice Harlan observed that the trial court in that case had been "lenient" in enforcing any rule, if rule there was, that such evidence was inadmissible and that, under those circumstances, the Court would not invalidate the proceedings at the trial level in that case. In this case, the trial court was even more "lenient" than had been the trial court whose decision was involved in *McGautha*. In appellant's trial the court permitted the appellant's employer to testify to the accused's work record and that he was a "good," "conscientious" and "honest" employee. His epileptic condition, including his treatment therefor, was developed in the record. There was no objection to the appellant's testimony about his dependent family, including the fact that his wife was expecting another child. His war record, the medals he had won while serving in Viet-Nam, and his honorable discharge, all were admitted in evidence without objection and were specifically referred to by counsel for the appellant in his argument to the jury, asking the jury to remember the appellant was "a man who has served his country," and "to also take a look at this sheet which tells you that he received a National Defense Service medal, the Vietnam Service medal and Vietnam Campaign medal." The appellant's wife, without objection, offered in evidence a Certificate of Appreciation from the Department of the Army and a Certificate of Appreciation "signed by the President." All of this evidence was irrelevant to the

---

**20.** *McGautha v. California, supra,* 402 U.S. at 218, 91 S.Ct. at 1473.

**21.** In *Johnson,* the defendant complained of the unitary trial procedure, contending that, in order to submit evidence on the penalty, he was forced to adduce "information concerning his background and his character" being compelled thereby to waive his privilege against self-incrimination. The objection thus was predicated on the assumption that a criminal defendant in a jury trial might offer evidence intended to influence the penalty verdict, which was irrelevant to the issue of guilt or innocence. Incidentally, the claim of a constitutional violation of the privilege against self-incrimination was answered in *Crampton* 402 U.S. at 213–217, 91 S.Ct. 1454.

In *Huggins,* the defendant was granted a new trial on the issue of punishment. In outlining the evidence admissible on such issue, the Court said:

\* \* \* At the new trial, the physical evidence admitted and marked as exhibits in the first trial may be considered, so much of the transcript of the testimony and proceedings in the first trial as may be necessary to show *the nature of the offense charged* and the circumstances under which it was committed may be read in open court, and such additional evidence as may be competent and relevant to the issue of punishment may be adduced.

issue of the appellant's guilt; its only relevance was on the issue of punishment.

■■ In support of his contention that he was denied the right to offer mitigating circumstances, the appellant points only to the disposition of certain of the testimony of the witness Kendall and that of the witness Langford at trial. The testimony of Kendall cited by the appellant in this connection dealt with the appellant's military record, a matter that was fully developed without objection in the testimony of both appellant's wife and of the appellant himself. Had Kendall's testimony on the appellant's military record been ruled inadmissible, such a ruling, if error, would thus have been harmless. Actually, though, Kendall's testimony on this point was not ruled inadmissible. The appellant, through his counsel, voluntarily abandoned any efforts to develop it when the prosecution suggested that its introduction might permit the introduction of rebuttal evidence. Langford's testimony, on the other hand, was ruled inadmissible. Langford was a former convict himself, who, following his release, had interested himself in prison conditions. He was prepared to testify to conditions generally in penal systems and particularly of those in the Virginia Spring Street prison. The trial court ruled that such testimony, because it related to matters over which the court had no control and for which it had no responsibility, and, also, because "conditions change from one institution to another within the State," was inadmissible. In further explication of its ruling, the court said that if the witness were to testify to assaults, etc., in any particular prison, he would have to know "the circumstances of each assault and so forth, within the walls of the prisons." At no point did the court, as we read the record, rule, during the colloquy about the admissibility of Langford's testimony, that testimony in mitigation was inadmissible. Actually, as we have already observed, it had admitted such evidence earlier. It was ruling narrowly on the relevancy to the issue of punishment, as imposed by the jury, of the specific evidence of conditions in certain penal institutions in Virginia. Whether such evidence was admissible or not on the issue of punishment would be a question of state law and would not present an issue of constitutional dimensions. We might add that were the admissibility of such evidence open for review by us, we would be persuaded to rule as did the State court.

■ All the above criticisms, however, lose any force because, under the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal. The verdict of the jury is the fixing of maximum punishment which may be served. Under such practice, the convicted criminal defendant is entitled to "two decisions" on the sentence,[22] one by the jury and the other by the trial judge in the exercise of his statutory right to suspend; his "ultimate sentence * * * does not [therefore] rest with the jury" alone but is always subject to the control of the trial judge.[23] This procedure makes the jury's finding little more than an advisory opinion or first-step decision. Any criticism of jury sentencing because it lacks the objectivity and principled decision of a judge is thus overcome by the existence of the power in the trial judge to bring his so-called superior judgment to bear upon the issue of proper punishment in reaching his decision whether to suspend the sentence or not.[24]

---

22. *People v. Ketchel* (1963) 59 Cal.2d 503, 30 Cal.Rptr. 538, 381 P.2d 394, 417.

23. *Grzesiowski v. State* (Ind.App.1976) 343 N.E.2d 305, 316.

24. *See* Note, *Jury Discretion and the Unitary Trial Procedure in Capital Cases,* 26 Ark.L.Rev. 33 at 52–3:

California and a minority of other states allow the trial judge to review the jury's verdict and reduce the degree of punishment if he feels that it is necessary. In these jurisdictions the judge is not a spectator, but rather it is his duty to participate in the punishment decision. As a result the defendant is 'entitled to two decisions on the evi-

■ So much for the peripheral issues which the appellant argues here but did not raise either below or in the State Court. The only alleged constitutional deprivation properly raised by appellant relates to the proceedings before the trial court after the jury had fixed his punishment. It is his position that there is such a significant difference in rights at sentencing between a defendant convicted by a jury and one convicted by the court [or who pleads guilty] that a violation of equal protection results. There is, of course, a basic difference between the two procedures and a difference to which the appellant does not advert and one which normally would work to the advantage of a defendant, who, like the appellant, has been tried by a jury. A criminal defendant tried by a jury has, as we have seen, two opportunities for mercy in punishment, one at the hands of the jury and the other through the exercise by the trial court of its power to suspend the jury's punishment in whole or in part. The defendant, on the other hand, tried by the court has only one forum in which to plead for mercy and that is at the sentencing hearing by the court. This difference in rights is generally thought to benefit a defendant, since " 'juries are more likely to act with compassion, fairness, and understanding than the judge.' "[25] The difference on which the appellant plants his claim, though, is that, before a criminal defendant convicted by the court in Virginia can be sentenced, the court must, on demand of the defendant, procure a probation report, whereas, in the hearing before the trial judge on whether to suspend the punishment as fixed by the jury, the trial judge at the time of appellant's trial, was not required to honor the appellant's demand for a probation report. In making this claim, we do not understand the appellant to contend that there is any constitutional right of a convicted defendant to demand a probation report before sentence.[26] Neither does he argue that the jury should be furnished a probation report in connection with its decision on punishment, recognizing that such a procedure would not be feasible.[27] What the appellant is arguing is that at the suspension hearing before the presiding judge after trial and sentence by the jury, the judge must conform precisely to the proceeding he would be required to follow had he tried

dence' [*People v. Ketchel* (1963) [59 Cal.2d 503,] 30 Cal. Rptr. 561, 381 P.2d 394, 417]. All authorities seem to concur that a judge is more qualified than a group of laymen to hear a capital case and that he will use his superior knowledge in reaching a just verdict. Because the judge *does* participate in the decision, the argument against 'standardless sentencing' disappears. Procedural regularity and a rational decision base are greatly increased. Since the court has an awareness of the state's policy as it regards punishment, the 'void for vagueness' contention also becomes irrelevant. Although the jury is not instructed as to a set of standards, the jury's judgment is indirectly limited by the presence of the trial judge. This procedure represents a compromise which alleviates the unconstitutional elements in the Arkansas procedure and at the same time allows the states to maintain complete jury discretion.

**25.** *See* 412 U.S. at 22, 93 S.Ct. at 1980.

**26.** *See, Roman v. Parrish* (E.D.Va.1971) 328 F.Supp. 882; *Pulliam v. State* (Ind.1976) 345 N.E.2d 229, 241; *United States v. Rosciano* (7th Cir. 1974) 499 F.2d 166, 168–9; *United States v. Duhart* (9th Cir. 1974) 496 F.2d 941, 945, *cert. den.* 419 U.S. 967, 95 S.Ct. 230, 42 L.Ed.2d 182 (1974), construing Rule 32(c), Federal

Rules of Criminal Procedure, prior to its 1975 amendment.

**27.** Note, *Jury Sentencing in Virginia,* 53 *Va.L. Rev.* 968, 998–1001; *Pulliam v. State, supra,* 345 N.E.2d at 241; *People v. Purvis* (1959) 52 Cal.2d 871, 346 P.2d 22, 29.

In the Note in 53 *Va.L.Rev.* at 998, the editor states:

* * * It would seem that the jury should be provided with the same type of presentence report which is now furnished to a Virginia judge when he is the sentencing authority. However, these presentence reports contain much information which traditionally has been categorized as hearsay. Arguably, the jury should not be allowed to consider such information even when it is performing the limited function of imposing the defendant's sentence. Thus the California and Pennsylvania *courts* have construed their penalty trial statutes to permit introduction of evidence at the sentencing proceeding only when that evidence is competent under the rules of evidence. Moreover, constitutional problems might arise if a statute expressly permitted the introduction of hearsay evidence at the penalty trial.

the defendant without a jury and had the responsibility of sentencing been exclusively his, *i. e.,* require, on demand of the defendant, a pre-sentence report. This is little more than declaring the equal protection demands that every right available at judge sentencing must be equally available at jury sentencing, even though there are, as we have seen, substantial differences in the two procedures. It is a claim that is conclusively answered by the decision in *Chaffin.* The point in that case was whether on retrial the jury, exercising its power to fix the punishment, might impose a sentence greater than the sentence given at the earlier trial, even though concededly a judge might not, in imposing his sentence after a trial by the court, impose a greater sentence.[28] The contention was that such a right in the sentencing jury at retrial, which it was argued secured no legitimate state interest, placed an impermissible burden on the appellant's right to choose to be tried by a jury after a successful appeal. Clearly, the difference involved in that case between the defendant's rights where there was jury sentencing and his rights where there was judge sentencing was far more substantial than in the situation presented by the appellant here. The Court, however, found no violation of constitutional rights in *Chaffin.*[29] The same result, it would appear, should follow here. It is true that in *Chaffin* the Court did not specifically refer to equal protection in its decision but equal protection was an integral part of the decision below,[30] and it must be assumed was before the Supreme Court. We accordingly find no error in the dismissal of this claim of the appellant.

It might be noted in conclusion that the appellant did not at allocution and does not now point to anything which might have been revealed in a probation report that would have been of benefit to him at the hearing before the trial court. The trial court had admitted mitigating evidence at trial. Prior to trial it had held an extensive hearing on psychiatric examinations of the appellant. It had before it, so far as the record indicates, every circumstance that might be argued in mitigation of sentence. It is difficult to see what prejudice the appellant could possibly have suffered from the failure of the trial court at the suspension hearing to have secured a probation report. We do not, however, rest our decision on this ground but on the want of merit in the appellant's claim of constitutional violation.

Accordingly, the judgment of the district court is

*AFFIRMED.*

**28.** *North Carolina v. Pearce* (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

**29.** For comments on this result, *see* 28 *Sw.L.J.* 469 (1974), 23 *Emory L.J.* 879 (1975) and 7 *Suffolk U.L.Rev.* 108 (1972).

**30.** *See* 5 Cir. 455 F.2d 640 at 641.