ALLDREDGE *v.* STATE OF INDIANA.

[No. 29,634. Filed March 13, 1959.]

*Olsen & Niederhaus, Ole J. Olsen, Clarence E. Nieder-*

*haus* and *Theodore Lockyear, Jr.,* of counsel, all of Evansville, for appellant.

*Edwin K. Steers,* Attorney General and *Merl M. Wall,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a judgment of the Vanderburgh Circuit Court in which the appellant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. There are two main questions involved in this appeal, the disposition of which will make unnecessary a consideration of other points raised. The record shows that the appellant, prior to trial, waived a trial by jury and asked to be tried by the judge. The record does not show that the prosecuting attorney was present at the time or that the court took any action thereon. At a later date the prosecuting attorney asked for a trial by jury, to which the appellant objected, and requested that the trial take place before the judge, without a jury. The court overruled the objections and request of the appellant and impaneled a jury which heard the case. The appellant claims error accordingly, and that he had a right to be tried before a judge without a jury as requested.

The appellant contends that the right of trial by jury is a privilege belonging solely to the defendant in a criminal case, which he may waive at his option. Article 1, Section 13 of the Constitution of Indiana provides in part:

"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, . . ."

The first Constitution of the State of Indiana provided that in all criminal cases "the right of a trial by jury shall remain inviolate." (Constitution of 1816,

State of Indiana, Art. 1, Sec. 5) Judge Isaac Blackford very early in the State's history held that under this provision the State had a right to request a trial by jury over the objections of a defendant in a criminal case. *The State* v. *Mead* (1837), 4 Blackford 309. Certain statements in this case were later cited with approval in *Todd* v. *State* (1951), 229 Ind. 664, 101 N. E. 2d 45. It should be noted, however, that there is a difference between the wording in the first Constitution and that in our present Constitution, in that under the present Constitution only the right of the accused is guaranteed and protected. More recently, in the case of *Mitchell* v. *State* (1953), 233 Ind. 16, p. 23, 115 N. E. 2d 595, the court said:

"The court submitted this case to a jury for trial after appellant had waived his right to trial by jury. He says this is error. Appellant certainly was entitled to trial by jury and was entitled to waive that right. But we know of no authority or reason for a contention that he had a right to demand trial without jury."

We have read with interest the article of Prof. Jerome Hall in 18 Amer. B. A. Journal (April, 1932, 226). It summarizes neatly various contentions made on the issue such as we have here. In reviewing a case before the Supreme Court of Illinois he says:

"A single issue was presented for review: the right of the State to a jury trial in a felony case. Appellant contended that the Illinois constitution did not establish the jury as an integral part of the frame of government, but merely guaranteed the accused this right; the State argued that the constitutional provision operated equally on behalf of the State and of the accused. Each side turned to history and to the general law to support its position. Appellant emphasized the point that unless his view were adopted, the State could compel a defendant to stand trial by jury and thus nullify

the recent, well considered decisions of *Patton* v. *United States* and *State* v. *Fisher,* which held that one accused of a felony can waive the jury. The State contended that the cases decided merely that the defendant could waive *his* right but that this did not affect the right of the State, which could withhold its consent or waiver in any event. It pointed out further that the defendant's waiver of his right to counsel did not limit the State in a like fashion; and that defendant's waiver of his right to meet the witnesses face to face did not prevent the State from presenting witnesses. Likewise with respect to other constitutional guarantees such as the right to compel the attendance of witnesses and the right to a public trial. The rule in these situations, it was argued, should apply in similar fashion to the right to trial by jury. Defendant countered by contending that trial by jury was the exclusive right of the defendant; that the judge himself had power to determine the facts in a criminal case; and that, in Illinois, the State cannot have a change of venue, from which it followed that the law did not contemplate such a thing as a judge unacceptable to the State."

We may observe here that because of the fact that a defendant is guaranteed the right to a trial by jury, it does not necessarily follow that he has a correlative right to be tried without a jury if he desires. There is nothing in the Constitution of the State of Indiana, so far as we can find, which guarantees a defendant a trial before a judge without a jury. There is nothing in the Constitution which prevents the legislature of this State from providing that all trials in criminal cases shall be by jury, since this does not deprive the defendant of any constitutional right. The legislature of this State has so provided except where, by consent of the parties and the court, a jury trial is waived.

Burns' §9-1803 provides:

*"Trial by court or jury.*—The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury." Acts 1905, ch. 169, §258, p. 584, being Burns' §9-1803, 1956 Replacement.

We are not unmindful of the recent case of *The People* v. *Spegal* (1955), 5 Ill. 2d 211, 125 N. E. 2d 468, upon which the appellant here places great reliance. In that case the Supreme Court of Illinois reversed itself and held that a defendant may waive his right to a trial by jury and insist upon a trial before the judge in a criminal case. A careful analysis of that well-written opinion reveals that it repudiates the theory enunciated in a previous opinion of the court of that state, namely, that there follows, by necessity, from the right to a jury trial and the privilege of waiving a jury trial, that any legislative restraint upon the privilege to waive is an infringement upon the judicial power of the court. *The People* v. *Spegal, supra,* holds that the legislature has the constitutional power to determine in criminal cases when and how a defendant may waive his constitutional right to a jury trial. The Illinois statute in question provided:

". . . in any case where the defendant pleads guilty or waives a jury, the cause shall be heard and determined by the court without a jury." (Ill. Rev. Stat. 1955, ch. 38, par. 736.)

Our examination of that opinion reveals that it turns upon this legislative enactment. The court there held that the defendant was entitled to waive the privilege to a trial by jury and the State was deprived of a jury trial by the Illinois statute. The Illinois statute under which the Spegal Case was decided and the Indiana statute with which we are dealing in this case are clearly distinguishable. We have given some considera-

tion previously to this question in this state. *State ex rel. Rose* v. *Hoffman, Judge* (1949), 227 Ind. 256, 85 N. E. 2d 486.

In *Murphy* v. *The State* (1884), 97 Ind. 579, the defendant and State agreed to submit the trial to the judge without intervention of a jury. After conviction, on appeal the defendant urged that the statute in question was unconstitutional, which provided for such a waiver. The court said at p. 585:

". . . For, if the defendant cannot waive his right to a trial by jury, neither can he waive his right to such trial in the county in which the offence shall have been committed; and the effect of such a conclusion would be to deprive him of the right and benefit of a change of venue from such county under any circumstances. Section 1821 of the criminal code, above quoted, does not deprive the defendant, in a criminal prosecution, of his constitutional right to a public trial by an impartial jury. It simply provides by law that such defendant, by agreement with the prosecuting attorney, and with the assent of the court, may, if he chooses so to do, waive his constitutional right to a trial by jury and 'submit the trial to the court.' Such statutory provision is neither repugnant to nor in conflict with any provision of our State Constitution, and is not void."

Cases in jurisdictions where no statutory restrictions are placed on the waiver or where the State is given no right to a jury trial should be distinguished from those having such legislation.

We recognize the argument presented in most of the discussions of the right of the State to a trial by jury and the denial of the defendant's right to waive the privilege that emotional prejudices and pressures often affect juries; that the prosecutor in such events is turning a shield intended for the protection of the defendant into a sword, to the injury and detriment of

the accused. There is much to be said from this viewpoint, particularly in giving the State the right to insist upon a trial by jury over the objections of a defendant, but the wisdom or policy in such matters is not for a court to determine. The remedy, as we have frequently said in such cases, is a matter for the concern of the legislature. We do not make the laws; we only attempt to interpret and follow them.

As stated in *Commonwealth* v. *Rowe* (1926), 257 Mass. 172, 180, 153 N. E. 537, where the court had under consideration an act of the legislature limiting the right of waiver to a jury trial:

"The legislature, which imposed the limitation, can remove it. In so doing, it will be acting within its constitutional powers, as the right of the accused to a jury trial on disputed facts will not be lessened."

In view of the statute in our State that all criminal trials must be by jury except where consented to by both the parties and the court, we hold the appellant was not entitled under the record to a trial without a jury over the objection of the State. The trial court committed no error in granting the State a jury trial.

The appellant raises a further question with reference to the evidence heard at the trial. While a police officer was on the stand, he volunteered, over the objections of the defendant, the statement that the defendant refused to take a drunkometer test.

Where the question of the admissibility of a drunkometer test has arisen before a court, it has generally turned upon the point as to whether or not it was submitted to voluntarily. We have held that when the evidence discloses that the accused freely and voluntarily consented to the test, it

was admissible. *Ray* v. *State* (1954), 233 Ind. 495, 120. N. E. 2d 176, 121 N. E. 2d 732; *Willennar* v. *State* (1950), 228 Ind. 248, 91 N. E. 2d 178; *Spitler* v. *State* (1943), 221 Ind. 107, 46 N. E. 2d 591.

The United States Supreme Court has held the use of a stomach pump against the will of the accused to recover capsules containing morphine swallowed by the accused was in violation of his constitutional rights. *Rochin* v. *People of California* (1952), 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183, 25 A. L. R. 2d 1396.

Justice Douglass said in the above case (342 U. S., at p. 179) :

". . . But I think that words taken from his lips, capsules taken from his stomach, blood taken from his veins are all inadmissible provided they are taken from him without his consent.";

and Justice Frankfurter said (342 U.S. at page 173) :

". . . It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach.

"To attempt in this case to distinguish what lawyers call 'real evidence' from verbal evidence is to ignore the reasons for excluding coerced confessions." See comments: 25 A. L. R. 2d 1407; 28 A. L. R. 2d 1104; 164 A. L. R. 967.

We do not have here a case of physical invasion of the body of the accused to obtain evidence to be used against him; nor do we have threat or force used to obtain the test in violation of due process. This is a case of admitting over objections, evidence of the "refusal" to permit a test or examination. It would seem if evidence obtained against the will by a forced physical invasion is not admissible, then a "refusal" to submit to

threats or waive such right would not be competent either.

On the other hand, such cases should be distinguished from those where there is a refusal to permit an examination or test which is legal and constitutional, ■ as a mental examination, or a physical examination such as comparing footprints, fingerprints and such related tests. *State ex rel. Mavity* v. *Tyndall* (1947), 225 Ind. 360, 74 N. E. 2d 914, Cert. Den. 333 U. S. 834, 68 S. Ct. 609, 92 L. Ed. 1118; *Voelker* v. *Tyndall* (1947), 226 Ind. 43, 75 N. E. 2d 548; *Biggs* v. *State* (1929), 201 Ind. 200, 167 N. E. 129, 64 A. L. R. 1085; *Ross* v. *State* (1932), 204 Ind. 281, 182 N. E. 865; *O'Brien* v. *State* (1890), 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323.

In *O'Brien* v. *State, supra,* the accused refused to permit an examination of his body for certain marks and scars. He was handcuffed and the physical examination forcibly made against his will. He objected on trial to any testimony as to the marks and scars thus obtained. This court in holding the evidence admissible said (p. 43):

> "The case is much like the examination of a person under arrest, for concealed weapons with which he could have committed the crime of murder of which he is accused, or for stolen property, when he is accused of larceny, and the right to examine the person of the accused for such purpose has never been questioned."

Similar constitutional questions have arisen with reference to taking fingerprints and keeping them on file even after the accused has been found not guilty. Judge Gilkison said in sustaining police action in that connection:

> "The extent to which the individual right may be

subordinated to the public weal cannot be fully defined. It seems to be a matter that necessarily grows as our society grows and becomes more and more complex. The matter of the legislative element of sovereignty as opposed to individual liberty, in the absence of other constitutional restrictions must be left to the gradual process of judicial inclusion and exclusion as the cases presented for decision require." *State ex rel. Mavity* v. *Tyndall, supra,* p. 366.

We are not concerned here merely with the due process clause of the United States Constitution, but also with the State Constitutional provision that:

"No person, in any criminal prosecution, shall be compelled to testify against himself." Constitution of the State of Indiana, Art. 1, Sec. 14.

". . . It [the constitutional provision] is nothing more than a statement of the common law rule of evidence and guarantees no greater privilege than that all persons shall be free from compulsion by legal process to give self-incriminating testimony.
. . .

". . . The provisions are limited to testimonial compulsion under process of some kind directed against the defendant as a witness." 14 Am. Jur. Crim. Law, sec. 144, p. 870.

The constitutional provision is limited to "testimonial compulsion" alone. Wigmore says:

"The general principle, therefore, in regard to the form of the protected disclosure, may be said to be this: The privilege protects a person from any disclosure *sought by legal process against him as a witness.*" 8 Wigmore on Evidence, 3d Ed., Sec. 2263, pp. 362, 363.

Wigmore also points out the difference in principles under which extrajudicial confessions become inadmissible because of force or threats, and "testimonial compulsion" brought about by legal process as a witness in a court room. 3 Wigmore on Evidence, 3d Ed., Sec. 823 (c), p. 249.

Indiana has followed the great weight of authority and accepted the above interpretation of the constitutional provision against self-incrimination. In *Ross* v. *State* (1932), 204 Ind. 281, 182 N. E. 865, Judge Treanor, considering the right of the State to force a physical examination of an accused, reviewed the leading authorities including Wigmore on Evidence, and says: (p. 293)

> "The essence of the privilege is freedom from testimonial compulsion. In the case of *O'Brien* v. *State* (1890), 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323, this court recognized and made the distinction between compulsory self-incrimination and compulsory submission to treatment which furnishes evidence for the purpose of identification of an accused. In that case an officer testified as to marks and scars found upon the defendant in an examination of the defendant's person. At the time of the examination the defendant was being held in jail as a fugitive suspect and the examination was made forcibly by officers to determine whether the defendant was the person named in the affidavit."

Greenleaf on Evidence says concerning the scope of the provision against self-incrimination as a witness against one's self that there has been an unwarranted tendency in some courts to extend the privilege to situations that are outside the court's processes:

> ". . . in ways unimaged by those who laid its foundation; and the question is now often raised whether the privilege does not protect an accused person from the inspection or search or exhibition of his person. In the great majority of jurisdictions this extension has received no sanction; for example, the accused may be compelled to stand up in court for identification; a physician may be sent to examine him, while in jail, as to his mental condition; a measurement of the accused's feet, for the purpose of identifying footprints, may be taken; the accused may be compelled to place his foot in tracks for the purpose of noting the cor-

respondence." 1 Greenleaf on Evidence, 16 Ed., Sec. 469e.

The cases involving the admissibility of evidence in a criminal case of the refusal of the accused to produce in court documents, books or papers after notice to do so involve "testimonial compulsion" and are not in point. The refusal in such cases was directed at the *legal process* by which the evidence was sought to be produced in court. Evidence of such refusal to comply with such process is not admissible. *McGinnis* v. *State* (1865), 24 Ind. 500; *Sprague* v. *State* (1932), 203 Ind. 581, 181 N. E. 507.

For the reasons stated the constitutional provision against self-incrimination is not applicable in this case since no legal process was used to force testimony from the accused as a witness. The appellant laid no foundation as a basis for his objection to a motion by showing that the proposed test would constitute a physical invasion of the accused's body. A proposal to draw blood from the accused's body for a test against his will would certainly constitute a violation of his rights, but the record is silent in that respect. *Alder* v. *State* (1958), 239 Ind. 68, 154 N. E. 2d 716.

There are various kinds of drunkometer tests. There is no evidence as to the nature or method proposed to be used in the making of the test in this case and whether or not it would require a physical invasion of the accused's body. If the State had the right to make such tests, then the refusal to permit the same would be competent evidence; on the other hand, if it was illegal to force the test upon the accused, then evidence of a refusal to permit the test would be just as inadmissible as the evidence obtained from the illegal act. The jury would not be entitled to

draw any inference from the refusal. In other words, if the proposed examination or test does not violate the due process clause, then the admission of evidence of a refusal to submit to the test is not violative of that clause. The appellant has failed to show as a basis for any objection that there is evidence of any illegality in the proposed test in this case. We have no authority to make suppositions not supported by evidence or the record in this case in order to hold the evidence inadmissible. The appellant has failed to show any claimed illegality and error.

We recognize the line to be drawn between the use of a stomach pump and the taking of finger prints or the examination for identification marks is rather difficult. We are not unmindful that hypothetical situations can be imperceptibly shaded from one field to the other by seemingly logical extensions. We frequently have such twilight zones in the law where nevertheless a line must be drawn between night and day, or right and wrong. Those are hard but unavoidable problems for the courts. The Constitution is intended to preserve practical and substantial rights, not mere theories.

In *State* v. *Gatton* (1938), 60 Ohio App. 192, 20 N. E. 2d 265, it is pointed out that crime detection must keep pace with modern means of travel, methods of escape and concealment of crime, and that finger printing does not violate the constitutional provision in question. *Gardner* v. *Commonwealth* (1954), 195 Va. 945, 81 S. E. 2d 614; *State* v. *Benson* (1941), 230 Iowa 1168, 300 N. W. 275; 2 Wharton, Criminal Evidence, 12 Ed., sec. 663, p. 575.

The reasoning is sound. Evidence given, not by the accused as a witness on the stand, but by another witness who observed his conduct, demeanor, mental con-

dition and statements when arrested or when accused, is admissible and competent evidence.

We hold that there was no error in the admission of the evidence of a refusal to take a drunkometer test where there is no evidence to show such a test would involve a physical invasion of the accused's body, which amounts to a violation of due process.

Appellant also complains of the overruling of objections to testimony about a so-called physical reaction test given the appellant. This test consisted of such actions as attempting to touch the tip of the nose with the right index finger, etc. The evidence shows the appellant submitted voluntarily to such tests. As stated above, all such voluntary acts and conduct of the appellant bearing on his guilt or innocence are relevant and admissible. Certainly his ability to perform simple or uncomplicated physical acts at or near the time of the alleged offense is relevant.

The other points raised in appellant's motion for a new trial were either waived by failure to discuss them in the brief, or concern rulings on objections which appear to have been harmless. Rule 2-17 (f) ; *Shively* v. *State* (1957), 237 Ind. 17, 141 N. E. 2d 921; *Deig* v. *State* (1928), 200 Ind. 125, 160 N. E. 673.

Judgment is affirmed.

Landis, C. J. and Achor and Bobbitt, JJ., concur.

Jackson, J., not participating.

NOTE.—Reported in 156 N. E. 2d 888.