Thomas Pulliam, Robert G. Reed, Gilbert D. Price *v.*
State of Indiana.

[No. 475S104. Filed April 14, 1976.]

*James E. Burke,* of South Bend, for appellant Pulliam. *David B. Weisman,* of South Bend, for appellant Reed. *Anthony V. Luber,* of South Bend, for appellant Price.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellants, Thomas Pulliam, Robert G. Reed, and Gilbert D. Price, were convicted on September 23, 1974, of commission of a felony while armed and assault and battery. On October 15, 1974, the trial court on its own motion vacated the assault and battery convictions of the Appellants. The three were then sentenced to confinement for twenty years on their other convictions. A motion to correct errors filed jointly by the Appellants was denied on January 31, 1975.

The evidence at trial revealed that at approximately 10:10 p.m. on November 10, 1973, three men entered Rocco's Restaurant in South Bend, Indiana. Two of the men were armed with revolvers. The third held a shotgun. The owner of the restaurant, Rocco Ameduri, his wife, Julia Ameduri, and his mother-in-law, Rose Simeri, restaurant employees, and a customer were made to lie on the floor face down. Money was demanded and taken from them and from the cash

register. The owner, his wife, and his mother-in-law were struck by the robbers. The victims were herded into the restaurant rest rooms, where they remained until police arrived.

The Appellants were identified by victims as these robbers. Further identification was supplied by police who arrived while the robbery was still in progress. One Appellant, Pulliam, was apprehended by police as he was backing out of the front door of the restaurant. He carried several purses in his arms, and was found to have a .38 caliber pistol, several rolls of coins, and currency in his pockets. The other two Appellants surrendered to police after running to the rear of the building. A search of the premises by police turned up a .357 magnum pistol behind a shelf on the north end of the building and a shotgun lying on the kitchen floor.

The Appellants were taken to the South Bend Police Station and "booked." Some routine questions were asked. Photographs were taken of the purses taken in the robbery. The purses and their contents were then released to their owners.

## I.

The Appellants here present twenty-two allegations of error. For the sake of readability, we will group them as best we can.

Presented as the first contention of error is the denial by the trial court of defense motions to poll the jury and for a mistrial. These motions stemmed from the appearance in the South Bend Tribune of an allegedly prejudicial article. This publication concerned another trial and included a "chastisement" of its deadlocked jury. The trial judge of that case was quoted as saying that the inability of a large majority to sway a stubborn juror had cost the taxpayers time and money.

This article did not present the "substantial peril" to the Appellants which would merit reversal. *Lindsey* v. *State*,

(1973) 260 Ind. 351, 295 N.E.2d 819. It did not concern the Appellants or their trial. It did not concern their trial judge. It did not concern a similar crime.

The jury in this case was repeatedly admonished to disregard publicity concerning the trial in which they were participating. The court's Preliminary Instruction No. 14 dealt at length with the requirement that each juror keep an open mind, that each should not read or listen to accounts of the proceeding and should confine his or her attention to the evidence presented at trial. When the newspaper article in question here was brought to the trial judge's attention, the jurors were further admonished to disregard anything they may have read regarding other trials. The trial court felt that a polling of the jury could only "exaggerate the situation."

"As aptly stated by Judge Sharp, writing for the Court of Appeals in this matter, 'It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors.' The trial judge must have much discretion in dealing with such problems." *Lindsey, supra,* 260 Ind. at 357, 295 N.E.2d at 823. We can find no abuse of discretion in the trial court's denial of the Appellants' motions to poll the jury and for a mistrial.

## II.

The Appellants present a number of issues concerning exhibits admitted into evidence at trial. The first such contention concerns a photograph of one of the robbery victims, the wife of the restaurant owner, sitting with her opened purse on her lap. The Appellants contend that this photograph was not relevant or material and that prejudice resulted.

This photograph was both relevant and material. Essential to the commission of the crime of robbery is the taking of an article of value. Ind. Code § 35-13-4-6 (Burns 1975). The purse displayed in the photograph was allegedly taken by

the Appellants in the alleged crime. The display in the photograph of the purse and its contents thus tended to prove a material fact in issue (relevance) and related to the crime charged (materiality). Moreover, it is difficult to perceive the prejudice suffered by the Appellants here. This photograph is of a middle age woman, smiling and displaying her purse. This cannot be said to be calculated to inflame the passions of the jury.

Also admitted into evidence was a .32 caliber pistol taken from Appellant Pulliam upon his arrest. The Appellants challenge the foundation that was laid prior to the admission of the gun into evidence. They point to the fact that the officer identifying the exhibit at first said he had taken a .38 caliber pistol from Pulliam. (The officer later testified that this was a mistake, that he had indeed taken a .32 caliber pistol from Pulliam.) The Appellants also point to a statement in a deposition by the witness that he had initialed and dated the weapon before turning it over to the police property room. His testimony at trial and the exhibit itself revealed that initials only had been placed on the gun.

These inconsistencies do not, as the Appellants contend, render the exhibit irrelevant and immaterial. These grounds for objection address the weight to be given to the exhibit rather than its admissibility. The contention of the Appellants that a proper chain of custody was lacking is also without merit. The officer testified that the exhibit was the gun he took from Pulliam and that it was in substantially the same condition as when taken from the accused. This identification sufficiently establishes the chain of custody for such an exhibit. *Fletcher* v. *State*, (1970) 253 Ind. 468, 255 N.E.2d 217.

The Appellants further contend that their cross-examination of the police officer on this matter was erroneously limited by the trial judge. As noted before both of the inconsistencies raised by the defense address the weight to be given to the exhibit. Cross-examination concerning them was therefore proper. However, ". . . the scope and extent of cross-examina-

tion of a witness is largely within the sound discretion of the trial court. . . ." 30 I.L.E. *Witnesses* § 112 at 103 (1960). The officer's incorrect identification of the weapon as a .38 caliber was before the jury and the same mistake in the officer's deposition was explored on cross-examination. The defense was free to emphasize these inconsistencies further during final argument. No ruling was made by the trial court regarding cross-examination on the placing of a date on the weapon, since such cross-examination was not initiated. The court ruled that the inconsistent statement regarding the gun's caliber had been sufficiently explored and we can find no abuse of discretion in this determination.

The same officer testified regarding three coin rolls which were taken from Appellant Pulliam. State's Exhibits No. 11, No. 12 and No. 13, were identified as the rolls seized. The witness testified that they were in substantially the same condition as when he confiscated them. The Appellants point out that while the coin wrappers were initialed and marked, the coins themselves were not. Thus, they contend, no foundation was laid which connects the coins with the three Appellants. This is a frivolous contention which deserves no further comment.

The Appellants similarly urge error in the admission into evidence of State's Exhibit No. 15, a .357 magnum pistol, and State's Exhibit No. 17, a shotgun. Testimony of the victims of the alleged crime and police revealed that the two individuals who fled through the rear of the restaurant were armed with a pistol and shotgun. When they surrendered they were empty-handed. A search of the scene of the crime resulted in the seizing of the two exhibits. The restaurant owner testified that he had an Italian pistol, differing from both weapons found by police. The testimony thus established a foundation sufficient to connect the weapons with the defendants and the contention of the Appellants to the contrary is without merit. Testimony also revealed that the exhibits were in substantially the same condition as when

they were found by police. A sufficient chain of custody was thus established. *Fletcher* v. *State, supra.* We find no error in the admission of State's Exhibits No. 15 and No. 17.

The Appellants also claim error in the admission into evidence of State's Exhibits No. 18, an envelope containing money and two 12-gauge shotgun shells, State's Exhibits No. 19, No. 21 and No. 23, police departmental receipts, and State's Exhibits No. 20 and No. 22, dollar bills. The Appellants contend that these exhibits were not connected to the alleged crime. This contention is without merit. Exhibit No. 18 contained currency and shotgun shells which, according to testimony, were taken by police from Appellant Price. Exhibit No. 19 was the departmental receipt concerning Exhibit No. 18. Exhibits No. 21 and No. 23 were departmental receipts concerning purses alleged to have been taken by the Appellants. Exhibits No. 20 and No. 22 were dollar bills taken from those purses. Common sense clearly establishes a sufficient connection between these items and the alleged crime to permit their admission into evidence.

### III.

The Appellants raise a number of other alleged errors which may be generally categorized as evidentiary issues.

The Appellants contend that the trial court erred in admitting into evidence statements by the Appellants to police regarding their ages. Ind. Code § 35-12-1-1 (Burns 1975), commission of or attempt to commit a crime while armed with a deadly weapon, requires for prosecution that the accused be over the age of sixteen years. The Appellants argue that they had not been informed of their *Miranda* rights before being asked to give their ages, and that the admissions which resulted should therefore have been excluded from evidence. It then follows that a material element of the crime would not have been proven.

The question asked of the Appellants regarding their ages was a routine question asked during the "booking process."

"Despite the breadth of the language used in *Miranda,* the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking an arraignment." *United States ex rel. Hines* v. *LaVallee,* (2d Cir. 1975) 521 F.2d 1109 at 1112-1113. Since the information solicited here was merely basic identification required for booking purposes, its admission was not barred by the failure of police to satisfy *Miranda's* warning procedure.

The trial court denied defense motions for a mistrial based upon two grounds. Asserted as one ground was that the prosecution had prejudicially "paraded" Mrs. Rose Simeri before the jury during the testimony of her daughter, Julia Ameduri. The trial court had previously ordered a separation of witnesses and the defense accordingly objected to the presence of Mrs. Simeri in the courtroom. The prosecution indicated that she had been brought into the room for the purpose of identification. The trial court then ruled that immediately following such identification Mrs. Simeri should leave. The characterization of this as a "parade" stems from the seating of Mrs. Simeri in front of the courtroom bar and not in the spectators' section.

Also asserted as a ground for mistrial was the volunteering of certain prejudicial statements by Julia Ameduri. The witness stated several times that someone had stepped on her mother's hand and that one of the robbers struck her mother. The first such remark was objected to and stricken as nonresponsive. The jury was instructed to disregard it. The Appellants admit that for "tactical reasons" further unresponsive and volunteered remarks were not objected to until the final remark. At that time objection was made and a motion to strike entered. The objection was sustained, the motion was granted, and the jury was again admonished. A motion for mistrial, however, was denied.

The granting of a mistrial is within the sound discretion

of the trial court. *Lolla* v. *State,* (1973) 260 Ind. 221, 294 N.E.2d 798; *Bonds* v. *State,* (1972) 258 Ind. 241, 280 N.E.2d 313. The trial court here did not abuse that discretion. Mrs. Simeri did not testify in this trial and the apparent failure to separate witnesses cannot be said to be prejudicial. Any other prejudice cannot be said to be much greater than the prejudice which attaches to any viewing by a jury of a victim of a crime. If a defendant desires to minimize such prejudice, he should perhaps be more discriminating in his selection of victims. We similarly see no impropriety in the court's action regarding Mrs. Ameduri's volunteered testimony. The testimony was stricken and the jury was admonished. Moreover, the testimony of other witnesses established that during the course of the robbery Mrs. Ameduri cried out, "Don't hit my mother, she's an old woman." Given the presence of such testimony before the jury, the objected-to statements appear harmless.

Detective Sergeant Michael Borkowski identified State's Exhibit No. 9 as an envelope containing currency and coins in the aggregate amount of $134.27. This money had been found in the rear seat of an automobile owned by "one of the Pulliam brothers" parked approximately three quarters of a block from Rocco's Restaurant. When this exhibit was offered into evidence, counsel for the Appellants properly objected on the grounds of materiality and relevance—no connection between the exhibit and the crime was established. The trial court held its ruling in abeyance pending further proof. At the end of the presentation of the State's evidence this proof had not been presented and the exhibit was not admitted into evidence. The Appellants entered separate motions for judgment and a mistrial, however, on the grounds that the offer of the exhibit into evidence and the testimony regarding it constituted an "evidential harpoon" irretrievably prejudicing their trial.

There is no contention here that the witness in question was called for the sole purpose of giving improper testimony.

It is contended that the prosecution must have known that the exhibit was inadmissible. This issue can be answered on a more fundamental level, however: are there reasonable grounds to believe that this violation may have prejudiced the Appellants' cause? We do not think so.

The Appellants also find error in the refusal of the trial court to strike testimony relating to purses allegedly stolen by the Appellants when the purses themselves were not entered into evidence. The Appellants rely on *Keiton* v. *State,* (1968) 250 Ind. 294, 235 N.E.2d 695 in which we wrote at 301, 698-699:

> "On the question of the necessity to introduce as exhibits the property alleged to have been stolen or at least a part thereof, this Court has previously held that it is not always necessary to introduce such property in evidence, and, citing Underhill's Criminal Evidence implied that is a matter within the discretion of the court. *Carver* v. *State* (1962), 243 Ind. 183, 183 N.E.2d 592.
>
> In the instant case we are not going to reverse the judgment on account of the failure of the State to introduce in evidence the stolen merchandise. We are of the opinion it is better to do so and that in all future cases, unless there be good reason, on account of weight, size and availability for not introducing such evidence as a part of its case in chief, as a part of the proof of the corpus delicti, the failure of the State to introduce such evidence as an exhibit or exhibits shall be sufficient reason to require the trial court, on motion of the defendant, to strike from the record all evidence relative thereto."

The statement in this case is an anomaly. There is no law to support the proposition that a failure to introduce into evidence a physical object about which there has been testimony is fatal and that all testimony regarding the physical object must go out. To the extent that this case holds that the failure to introduce into evidence the physical object of a theft creates an insufficiency of the evidence and is a fatal defect, it is overruled.

The consolidated informations upon which this case was tried did not specify purses as the property stolen. They

all specified currency. Admitted into evidence at trial were dollar bills taken from the purses. Testimony regarding the purses themselves was essential to establish the relevancy and materiality of those exhibits. We find no error here.

At the conclusion of the State's case a defense motion was made to strike the identification testimony of certain witnesses who had been victims of the alleged crime. This motion was based upon allegations of suggestive pre-trial identification procedures. The only record of such procedures presented to us, however, are those allegations contained in the motion to strike. It is the duty of an Appellant to present an appellate court with a proper record. *Buchanan* v. *State,* (1975) 263 Ind. 360, 332 N.E.2d 213. We are presented here with a record which is totally lacking on this issue. We can only deem it waived.

It is interesting to note that the Appellants make much of the poor quality of some of these in-court identifications. The witnesses stated they did not get a good look at the defendants. Several witnesses were confused or could not thoroughly describe the robbers from memory. These points address the weight to be given the identifications, not their admissibility. Defense counsel ably explored them on cross-examination. Given the nature of the in-court identifications, one may well ask whether the pre-trial identification procedure could have been all that suggestive.

## IV.

A number of the Appellants' allegations of error concern instructions given by the trial court. The first such contention concerns State's Instruction No. 1:

"You are instructed that a defendant may be convicted as a principal upon evidence that the defendant aided or abetted in the perpetration of the crime. It is not necessary that the state prove that the individual defendant did the actual physical taking of the money or received any of the money."

This is a correct, though perhaps incomplete, statement of the law. *Cline* v. *State,* (1969) 253 Ind. 264, 252 N.E.2d 793. It is made more complete by its inclusion with State's Instruction No. 3, in which the Appellants also see error. That instruction reads as follows:

"A defendant is responsible for the acts of his confederates as well as his own. It is not essential that participation of any one defendant in each element of robbery be established. Any act of one is attributable to them all."

This instruction is taken directly from *Cline* v. *State, supra.* We can find no error in its content.

The Appellants also challenge State's Instruction No. 4:

"You are further instructed that it is not essential that the State of Indiana prove that the defendants in perpetrating the alleged robbery, took the sum alleged in the information from the persons of Rocco Ameduri, Julia Ameduri or Diane Holmes as alleged in the information filed against the defendant. It is sufficient if you find from the evidence that something of value was taken from the persons of Rocco Ameduri, Julia Ameduri, or Diane Holmes."

The crime of robbery does not possess as one of its elements the taking of a specific sum. It requires only the taking of something of value. Ind. Code § 35-13-4-6 (Burns 1975) ; *Adams* v. *State,* (1969) 252 Ind. 407, 248 N.E. 2d 551. This instruction, while not perfect, is correct. It should be further noted that the trial court read as Court's Final Instruction No. 24 the statute defining the crime of robbery. The Appellants argue that this is argumentative repetition. We do not see it that way. One instruction stated a complete legal definition. The other sought to put the statute in more understandable terms. We can see no error in such an attempt to clearly communicate with laymen.

The Appellants also challenge State's Instruction No. 5:

"You are further instructed that the State has the burden of proving beyond a reasonable doubt each essential element of the crime of Inflicting Injury During the Commission of a Robbery. The essential elements of the crime of Inflicting Injury During the Commission of a Robbery are: (1) the

inflicting of an injury by the defendant upon the person of another with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack or any other deadly or dangerous weapon, (2) while the defendant is engaged in the commission of a robbery."

The Appellants contend that this instruction misstates the essential elements of the crime of inflicting injury during the commission of a robbery. The Appellants were not convicted of this crime, however, and it is accordingly difficult to see where they were prejudiced by this alleged misstatement. The Appellants also contend that the instruction failed to instruct on the essential elements of the crime of robbery. As noted before, this had already been done. Instructions are to be read together. *Cockrum* v. *State,* (1968) 250 Ind. 366, 234 N.E.2d 479.

The Appellants further claim that the trial court erred in giving State's Instruction No. 8:

"A person engaged in the commission of an unlawful act is criminally liable for probable and natural consequences, including everything done by confederates, which follows, incidentally in the execution of a common design, even though not intended as part of the original design."

This instruction was taken directly from *Atherton* v. *State,* (1967) 248 Ind. 354, 229 N.E.2d 239. We see no error in the instruction itself and no harm in any resulting repetition of State's Instruction No. 3.

The Appellants also urge error in the giving of State's Instruction No. 9:

"You will understand that you, and you alone, as jurors, are to determine the weight and credit to be given and testimony of the witnesses. These are things for you to determine in your search and endeavor to find the truth of the case, and your final decision must rest solely upon the law and evidence of the case without any reference to the probable consequences."

The Appellants argue that this instruction was repetitious. This same contention of repetition and undue emphasis is aimed at the following instructions of the trial court.

"INSTRUCTION NO. 5: It is your duty to determine the facts of this case from the evidence given in court in your presence and to disregard any and all information that you or any of you may have derived from any other source.

INSTRUCTION NO. 8: The Court, in its rulings, did not then and does not now intend to express any opinion as to any question of fact, all questions of fact as well as the law being exclusively for your determination as elsewhere stated in these instructions.

INSTRUCTION NO. 14: You will understand that you, and you alone, as jurors, are to determine the weight and credit to be given the testimony of the witnesses. These are things for you to determine in your search and endeavor to find the truth of the case, and your final decision must rest solely upon the law and evidence of the case without any reference to the probable consequences.

INSTRUCTION NO. 15: You are the judges of the credibility of the witnesses and the weight to be given to their testimony. You should reconcile the evidence in this case upon the theory that each and every witness has spoken the truth, if it can be reasonably done. You should not disregard the testimony of any witnesses without due consideration and without just cause. If you find such conflict in the testimony of the witnesses that you cannot, reconcile their testimony, then it is your province to choose whom you will believe and whom you will not believe. In determining what evidence you will receive and what you will reject, you may take into consideration the interests, if any, that any witness has in the result of this trial, his or her manner or demeanor upon the witness stand, the probability of his or her testimony, his or her testimony, his or her means of knowing the things of which he or she testified, his or her relationship, if any, to the accused or other interested persons, if any, and such other considerations as may appear right and proper to you in arriving at the truthfulness of each and every witness."

We do not see that the repetition urged here is of a point prejudicial to the Appellants. Absent such prejudice, we can find no reversible error. *Wilson* v. *State,* (1975) 263 Ind. 469, 333 N.E.2d 755.

The Appellants final contention concerning instructions is that the trial court erred in giving its final instructions. For whatever reason, counsel for Appellant Pulliam did not re-

ceive a copy of the instructions. When discussion of them commenced between opposing counsel and the trial court, it became apparent to Pulliam's counsel that the final instructions were not going to simply repeat the trial court's preliminary instructions. Counsel's request to terminate discussions until he could study the instructions was denied. The Appellants thus contend that effective assistance of counsel was denied to Appellant Pulliam and that reversible error resulted when those instructions were given.

Again, the Appellants have shown no prejudice. The Appellants allege no error in the instructions themselves other than the repetition discussed previously. We can thus find no error in their being given to the jury.

## V.

In two related contentions the Appellants argue that the evidence was insufficient to support the jury's verdict and that the jury's verdicts of commission of a felony while armed and assault and battery were inconsistent. These contentions are without merit.

One Appellant was arrested by police as he was backing out of the front door of the restaurant carrying purses, change, currency, and with a gun in his pocket. The other two Appellants surrendered at the rear of the restaurant. The three were identified by their alleged victims and by police. None of the robbers wore masks and the lighting in the restaurant was good. Guns were found in the restaurant matching the description of those carried by the robbers.

"It is well-established that this court, in determining the sufficiency of evidence, does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State*, (1975), [264] Ind. [14], 332 N.E.2d 103; *Blackburn* v. *State*, (1973) 260 Ind. 5, 291

N.E.2d 686; *Jackson* v. *State*, (1971) 257 Ind. 477, 275 N.E.2d 538." *Matthew* v. *State*, (1975) 263 Ind. 672, 337 N.E.2d 821 at 822. The evidence in this case was clearly sufficient to support the jury's verdict.

The alleged inconsistency between the jury's verdicts is not really an inconsistency at all. The Appellants are correct in their assertion that assault and battery, a misdemeanor, could not support the greater offense of commission of a felony while armed. However, the underlying felony of the Appellant's conviction was robbery. A conviction for commission of a felony while armed need not be accompanied by a conviction of the underlying crime. "A verdict of guilty for this crime implicitly finds that an attempted or committed felony occurred." *Anderson* v. *State*, (1975) 263 Ind. 583, 335 N.E.2d 225 at 229. In short, a conviction for the crime of armed robbery does not require that the defendant also be convicted of robbery, a lesser included offense. It may be speculated that the trial court dismissed the conviction of the Appellants for assault and battery in part to avoid such confusion as is apparent here.

## VI.

The final contentions of the Appellant concern the procedure under which they were sentenced. Pursuant to Ind. Code § 35-12-1-1 (Burns 1975), the Appellants were sentenced by the jury. This was done without the aid of a presentence report and presents an apparent variance from the requirements of Ind. Code § 35-8-1A-9 (Burns 1975) which reads as follows:

*"Presentence report required.*—No defendant convicted of a felony shall be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court. Delay of sentence to await a presentence report does not constitute an indefinite postponement or suspension of sentence."

The Appellants contend, in short, that the jury should have considered the presentence report. To do otherwise, they

contend, is to deny them due process and the equal protection of the laws. The Appellants' brief reads:

"It is the contention herein that Pulliam, Price and Reed were denied due process by the failure of Indiana procedure to provide for use of a presentence report by the jury which set their sentences. They were denied equal protection of the laws since no reason exists for treating them differently as convicted criminals except the arbitrary statute making the jurors the ones to fix sentence in armed felonies."

With the statement of the Appellant that the presentence report statute has no application in jury trials we must agree. This leaves only the question of whether or not the equal protection and due process clauses of the Constitution are violated by the Legislature requiring that the judge have a presentence report before sentencing while not requiring one in the case of a jury trial.

The due process argument of the Appellants is nothing more than a corollary of their equal protection contention. The classification created by the Legislature is this: defendants sentenced by jury as opposed to those sentenced by a judge. Because the right to have a presentence report considered prior to sentencing is not a "fundamental" right, our attention must focus on whether there is a rational basis for the classification. *Martin* v. *State*, (1974) 262 Ind. 247, 317 N.E.2d 430. We believe that there is.

To require that a presentence report be presented to a jury would open a Pandora's box. The hearsay and extraneous evidence in such a report makes such a presentation impossible prior to the reaching of a verdict. The rights of an accused to contradict and offer additional evidence renders consideration by a jury after its verdict impractical. Such a bifurcated proceeding—necessarily delayed by the preparation of a presentence report after a verdict of guilty—would in effect result in a second trial on the issue of sentencing.

In approaching this issue it should be noted that a de-

fendant only has a constitutional right to a *jury* trial. The Indiana Constitution, Article 1, Section 13 provides:

> "*Rights of accused.*—In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

Judge Isaac Blackford very early in Indiana history held that under this provision the State had a right to request a trial by jury over the objections of a defendant in a criminal case. *State* v. *Mead*, (1837) 4 Blackford 309. This has been approved from time to time in later cases. *Alldredge* v. *State*, (1959) 239 Ind. 256, 156 N.E.2d 888; *Singer* v. *United States*, (1965), 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630; *State ex rel. Helm* v. *Fraser*, (1973) 260 Ind. 585, 298 N.E.2d 423. In *Alldredge* we wrote:

> "We may observe here that because of the fact that a defendant is guaranteed the right to a trial by jury, it does not necessarily follow that he has a correlative right to be tried without a jury if he desires. There is nothing in the Constitution of the State of Indiana, so far as we can find, which guarantees a defendant a trial before a judge without a jury. There is nothing in the Constitution which prevents the legislature of this State from providing that all trials in criminal cases shall be by jury, since this does not deprive the defendant of any constitutional right. The legislature of this State has so provided except where, by consent of the parties and the court, a jury trial is waived.
>> Burns' § 9-1803 provides:
>> '*Trial by court or jury.*—The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury.' " 239 Ind. 256 at 260-261, 156 N.E.2d 888 at 890.

The privilege of a bench trial is thus not a constitutional right, but an option to be had under statutory provisions. If a defendant elects to seek the privilege of a bench trial and the State concedes thereto, the defendant must take it as provided by statute. A trial before

a judge affords a defendant benefits as well as detriments. A defendant, in consultation with his counsel, must weigh them in deciding whether or not to seek a bench trial.

There are, of course, inherent differences in the procedures followed when trial is before a jury and when trial is before a judge. Aside from the fact that the statute provides for a presentence report before a judge and not a jury, we point out that in a hearing on the admissibility of evidence, the judge hears the facts as to the irrelevant evidence as well as the relevant, while a jury does not hear the evidence presented on the collateral hearing on the issue of admissibility. A defendant has a right to examine jurors on voir dire, but he has no right to examine a judge on voir dire. He has a right to have a jury instructed on the law, but no such privilege exists in a trial before a judge. A defendant may have the right to have a jury sequestered from publicity. He has no such right in a trial before a judge. The use of a presentence report prior to sentencing is but another necessary difference.

All this is to say that a defendant has no inherent right to have a presentence report considered prior to his sentencing. This is a privilege which the Legislature has granted defendants tried before a judge and which it has necessarily denied those defendants tried before a jury. This classification of defendants has been made against a background of differences of procedure which must necessarily exist between jury and bench trials. It has resulted from due process considerations of jury trials which do not permit the practical use of presentence reports. We believe these factors provide a rational basis sufficient to support the constitutionality of the classification challenged by the Appellants and we can find no error.

The judgment of the trial court is affirmed.

Givan, C.J., Prentice, J., concur; Hunter, J., concurs in result; DeBruler, J., concurs with opinion in which Prentice, J., concurs.

## Concurring Opinion

DeBruler, J.—There are considerations, in addition to those identified by the majority opinion, which could reasonably have supported the Legislature's decision that juries should not have pre-sentence reports before them when making significant sentencing choices. Indiana Code §§ 35-8-1A-10 and 35-8-1A-11, Burns §§ 9-2252 and 9-2252a, describe the contents of such reports:

> "The presentence investigation consists of the gathering of information with respect to the circumstances attending the commission of the offense, the convicted person's history of delinquency or criminality, social history, employment history, family situation, economic status, education and personal habits. Such investigation may also include any other matter which the probation officer conducting the investigation deems relevant to the question of sentence, and must include any matters the court directs to be included." § 35-8-1A-10

> "The court may order that the convicted person undergo a thorough physical or mental examination in a designated facility as part of the presentence investigation. . . ." § 35-8-1A-11

Judging from this description, the scope of such an investigation is practically unlimited. The pre-sentence report could include references to past arrests, other pending-charges, dishonorable discharges from the military forces, probation violations, suspensions from school, prior acts of juvenile delinquency, license revocations, quasi-criminal convictions for contempt of court or failure to support, or a multitude of other matters relating to past occasions on which the defendant found himself at odds with official authority. Because of his experience and knowledge of the law, and his acquaintance with those engaged in the investigating and reporting, a judge quickly places such confrontations with official authority upon a proper priority continuum. A judge also bases his sentencing choices upon his knowledge of norms which establish themselves in this area. The jury on the other hand is usually bereft of such experience or knowledge. The Legislature may well have concluded that jurors have no

basis in knowledge or experience to judge accurately a vast portion of the material which is included in the report, and, therefore, to present them with such information is to invite an unreasonable choice either much too lenient or much too severe. Such a result would be at odds with the purpose of the pre-sentence statute.

Prentice, J., concurs.

NOTE.—Reported at 345 N.E.2d 229.