**Alfred Alphonse SMITH, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 775S172.

Supreme Court of Indiana.

Oct. 1, 1981.

Don G. Blackmond, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Smith was charged in the St. Joseph Superior Court with the crime of rape in Count I, and commission of a felony while armed in Count II. He was tried by jury and found guilty of both counts and sentenced to a period of imprisonment for 15 years.

Appellant raises four issues for our review, concerning: 1) error of the trial court in permitting private counsel to sit with the prosecuting attorney during the trial; 2) restricting the defense in inquiring into the past sexual conduct of the victim during cross-examination; 3) refusal of the trial court to grant a new trial because of alleged misconduct of a juror; and 4) constitutional infirmity of the statutes under which appellant was convicted.

On March 26, 1974, the victim arrived at her home about 10:00 p. m., after attending night classes. She got out of her car in

front of her home and locked it. Defendant-appellant then ran up to her with a knife, forced her back into her car and then drove her car to an alley behind an office building. There defendant forcibly raped the victim and performed other sexual acts upon her. The victim saw defendant walking down the sidewalk four days after this incident, recognized him and phoned the police.

### I.

■ The record shows that attorney Marcia Burgdorf requested permission of the trial judge to enter an appearance with the prosecutor for the State of Indiana for the trial of defendant. The deputy prosecuting the case, John D. Krisor, Jr., indicated to the court that attorney Burgdorf was acquainted with the victim, that she was licensed to practice law in the State of Indiana, and that she had been sworn in as a special deputy prosecutor for the trial of this case only. The trial court indicated that since Mrs. Burgdorf was a licensed attorney he would allow her to participate as an assistant or in a passive role. Appellant's objection seemed to be that Mrs. Burgdorf appeared as the victim's private attorney and that her presence was prejudicial to the defendant in that it lent credence to the victim's testimony by implication.

Nowhere in the record does it appear that Mrs. Burgdorf was, in fact, the victim's private counsel nor was she introduced to the jury as such. The introduction to the jury indicated only that Mrs. Burgdorf was going to be assisting the prosecutor and the record does not show that she did anything whatsoever in the trial. Although she sat with the prosecuting attorney at the counsel table, she did not participate in the trial. The defendant, therefore, has not shown that the presence of Mrs. Burgdorf created any prejudice or harm to the defendant other than the speculative statement that it could have influenced the jury's verdict. Also, since the prosecuting attorney indicated to the court that Mrs. Burgdorf had been sworn as a deputy prosecuting attorney, she had a perfect right to appear for the State in a criminal case and it was not incumbent on the trial judge to refuse her appearance particularly since no sound reason was given for doing so. We find no error on this issue.

### II.

Several months prior to trial, the State filed a motion *in limine* and at the time of trial the court granted said motion as follows: "And now the court sustains the State's motion *in limine*. The defendant is prohibited from cross-examining the State's chief witness concerning any incidents of sexual conduct on her part either prior to the date of the alleged offense on March 26, 1974, or after this date or on said date other than the incident involved."

■ No objection was made to the entry of this order by the court nor was the question ever raised again during the trial. There was no attempt to cross-examine the witness on this subject nor was any evidence offered. The resolution of this case was delayed because of pending matters between the parties so we judge it now some years after it was actually tried. The rape shield statute as we know it now, Ind. Code § 35-1-32.5-1 *et seq.*, (Burns Supp. 1980) became the law in Indiana shortly after this case was tried. Even though there was no statutory prohibition entitling the victim to protection in regard to her past sexual conduct, appellant does not show here that any error was committed to his prejudice during the trial. As we have stated many times, an order *in limine* is a temporary order requiring that a party notify the court and counsel when he intends to offer evidence covered by the *in limine* order; the court can, at that time, determine the admissibility of the evidence. This was not done, nor was there any offer of proof showing the purpose, relevancy, and materiality of any evidence that might be available on the subject. If there was, in fact, any error, it was waived. *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244.

### III.

■ After the jury came back with the verdicts of conviction and before the members of the jury left the courthouse premises, one of the jurors gave the bailiff of the court a new pocket Bible and asked the bailiff to give it to the defendant. Appellant alleges this was misconduct by the juror and grounds for reversal of his conviction. Appellant does not point out how this conduct demonstrates harm or prejudice to him other than the speculative assessment that it may demonstrate that the juror had prejudged the defendant guilty and thought he was in need of the Bible. We are given no other facts about this juror or about the incident. The act of giving a Bible to the defendant did not represent misconduct or illegal activity nor does it even infer animosity or prejudice from the juror to the defendant. We find no error on this issue.

### IV.

■ Appellant finally claims that jury sentencing without consideration by that jury of a presentence investigation report violates the protection of the law or due process clause of the constitution since it is statutorily mandated in bench trials that the judge must examine the presentence report before he pronounces sentence. Since the jury was permitted to determine the sentence of defendant in this case, it is appellant's contention that the jury should not have been allowed to pronounce sentence without being fully informed of all facts in a presentence investigation report that the trial judge had at his disposal. We have previously determined this issue in which we held that appellant has no inherent right to have a presentence report considered prior to sentencing. *Wilson v. State*, (1978) 268 Ind. 112, 374 N.E.2d 45; *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229. The statute which requires a presentence report to be considered by the court prior to sentence applies only to cases tried before a judge and the privilege is denied to those tried before a jury.

The judgment of the trial court is in all things affirmed.

GIVAN, C. J., and DeBRULER, J., concur.

HUNTER, J., concurs in result with separate opinion in which PRENTICE, J., concurs.

HUNTER, Justice, concurring in result.

I concur with the majority opinion in all respects except one. I do not agree that Marcia Burgdorf, a private attorney and friend of the rape victim, should have been permitted her role as "special deputy prosecutor" to which she was appointed specially for this case. In that respect, the trial court and state both erred. Because Burgdorf sat mute throughout the proceedings, however, no prejudice inured to defendant by virtue of her presence. For that reason, I respectfully concur in the result ultimately rendered by this Court.

The majority states that because Burgdorf was "sworn as a deputy prosecuting attorney" for the instant case, she had a *"perfect right* to appear for the State." (Emphasis added). Burgdorf should never have been appointed; however, once appointed, the court should not have permitted Burgdorf to fulfill her appointment.

That is so because of the responsibilities which are peculiarly incumbent upon prosecutors. Those duties are fully outlined in Ethical Code 7–13 of our Code of Professional Responsibility:

> "*The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.* This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the

prosecutor has responsibilities different from those of a lawyer in private practice: the prosecutor should make timely disclosure to the defense of available evidence, known to him, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecution's case or aid the accused." (Emphasis added.)

An attorney of private practice, such as Burgdorf, is "the usual advocate" as that phrase is employed in the canon.

The usual advocate may fully appreciate the imperative demand of EC 7–13 that the prosecutor simultaneously assume an adversarial and non-adversarial posture. Yet the usual advocate, as implied in the appellation, is not daily practiced in the rigors of the art. The human experience tells us we should not project a neophyte prosecutor into the grave matter of a felony arrest, charge, and trial *when the neophyte-usual advocate is a friend of the victim.* The friendship and human compassion which inspires assumption of the role might inevitably detract from the vigilant impartiality with which a prosecutor is expected to proceed.

That the expectation be fulfilled is crucial to continued public trust and confidence in our criminal justice system, as well as in the office of the prosecutor. That concern also warrants the *appearance* of impropriety and impartiality be scrupulously avoided, as is emphasized in our canons. *Code of Professional Responsibility,* EC 9–1 *et seq.* Although no "appearance of impropriety" is present in the facts of this case, circumstances such as those involved here are ripe with opportunity for both the appearance of impropriety, as well as actual impartiality measured against the precepts of Canon EC 7–13.

For these reasons, appointments like those present here have no place in our system of justice. Burgdorf had no right to appear as special deputy prosecutor, let alone a perfect right. Her passive role, however, rendered the error wholly harmless.

I concur in result.

PRENTICE, J., concurs.